**KELLY v. ROETZEL.**

No. 5394—Opinion Filed May 8, 1917.

Rehearing Denied June 6, 1917.

(165 Pac. 1150.)

(Syllabus by the Court.)

1. **Appeal and Error—Review—Qualification of Special Judge.**

Where an action is tried before a special judge selected by ·agreement of the parties in

accordance with the statute and no question is raised in the trial court as to his power or authority to hear and determine the case or as to the regularity of his selection, such question cannot be urged for the first time in the Supreme Court on appeal.

**2. Libel and Slander—Special Damages—Allegation.**

Where in an action for libel the article published is libelous per se, it is not necessary for plaintiff to allege or prove special damages.

**3. Libel and Slander—Construction of Alleged Libel.**

In construing an article claimed to be libelous, it is the duty of the court to construe the words used in their most natural and obvious sense, and give them that meaning which would most naturally be ascribed thereto by those to whom the article was addressed.

**4. Libel and Slander—Language Libelous Per Se—Instruction.**

Where the language used is obviously libelous per se, it is the duty of the court to so instruct the jury as a matter of law.

**5. Libel and Slander—Verdict—Statute.**

Section 4961, Rev. Laws 1910, declaring that when verdict is for plaintiff the verdict shall in no case be less than $100, authorizes a minimum verdict in plaintiff's favor in each suit or action, and not for each act or instance of libel.

**6. Constitutional Law—Constitutionality of Statute—Determination.**

The Supreme Court will not pass upon the constitutionality of an act of the Legislature until there is presented a proper case in which it is made to appear that the person complaining has, by reason thereof, been or is about to be deprived of some right or privilege to which he was lawfully entitled, or who is about to be subjected to some of its burdens and penalties.

Error from District Court, Blaine County; John F. Curran, Special Judge.

Action by Joseph P. Roetzel against W. R. Kelly. Judgment for plaintiff, and defendant brings error. Modified and affirmed.

Ed Baker, R. C. Brown, and Seymour Foose, for plaintiff in error.

A. L. Emery and Burwell, Crockett & Johnson, for defendant in error.

HARDY, J. This was an action for damages brought by Joseph P. Roetzel, who will be referred to as plaintiff, against W. R. Kelly, who will be referred to as defendant. Verdict was for plaintiff, and defendant appeals.

Defendant filed application for disqualification of the presiding judge of the district court of Blaine county on the alleged ground of prejudice in favor of plaintiff.

This application was denied, whereupon the court announced that he would retire from the bench if counsel could agree on another judge to try the case. By agreement of counsel for both parties, John F. Curran, of Enid, was selected as special judge, before whom the trial proceeded, and defendant withdrew his application for a change of judge. No objection was made before or at the trial to the authority of the special judge to try the case, and the question is presented for the first time in briefs of counsel.

It is contended that, inasmuch as the regular judge was not disqualified or in any way shown to be incompetent to preside during the trial, there was no authority of law for the parties to agree upon a special judge to sit in the trial of the case, and it is further claimed that the parties were coerced into agreeing upon the special judge selected. As to the latter question, it is sufficient to say that defendant had the right to reserve an exception to the ruling denying his application for a change of judge, but did not see fit to do this. Upon the court indicating a willingness to retire from the bench in the event counsel could agree upon a special judge, defendant entered into such an agreement, and withdrew his application and tried the case before the special judge without objection. In Bradley et al. v. Chestnutt-Gibbons Gro. Co., 35 Okla. 165, 128 Pac. 498, it was held:

"Where an action is tried in the trial court before a judge pro tem., elected by the members of the bar under the provisions of the statute for the election of judges pro tem., and no question is there raised as to the power or authority of such judge pro tem., to hear and determine the case, or as to the regularity of his election, and all the parties proceed to trial without objection or exception thereto, the regularity of his election and his authority to hear and determine the case cannot be questioned for the first time in this court on appeal."

It is a general rule that objections to the authority of a special or substitute judge may be waived by the act or omission of a party, and ordinarily such objections are waived when they are not promptly made. The objection should be made at or before the trial, and cannot be made for the first time upon appeal; and, if not made in the trial court, are deemed to have been waived. 23 Cyc. 616; 15 R. C. L. 516, § 6; Tillman v. State, 58 Fla. 113, 50 South. 675, 138 Am. St. Rep. 100, 19 Ann. Cas. 91; Higby v. Ayers, 14 Kan. 331; Mo. Pac. Ry. Co. v. Preston, 63 Kan. 819, 66 Pac. 1050; 11 Enc. Pl. & Pr. 793. Many decisions are cited in support of the text in 23 Cyc. 616, and an extensive note is found appended to the case of Tillman v.

State, 19 Ann. Cas. 91, from which it is clearly made to appear that the great weight of authority is in favor of the rule above stated. Higby v. Ayers, 14 Kan. 331, is directly in point. In that case it was said:

"This case was tried before a judge pro tem. But whether such judge was duly elected and qualified does not appear. It does appear, however, that all the parties consented to try the case before him. It also appears that there were 'no statutory provisions disqualifying the regular judge from presiding at the trial.' From this we suppose that the regular judge was not sick, absent, interested, related to either of the parties, or otherwise disqualified from hearing and determining the case. But suppose the regular judge was present, and competent to hear and determine the case, still he did not do it, but allowed a judge pro tem. to do so. The district court was in session. No question is raised as to the jurisdiction of the court over the subject-matter of the action and the parties to the suit. The case came regularly on for trial; a judge pro tem. tried it; the Constitution and laws recognize such an officer; and whether this judge pro tem. was regularly and legally filling the office or not, still he did fill the office and was therefore an officer de facto; and his acts were therefore not void, but, like the acts and proceedings of all other officers de facto, are valid and binding. * * * But attempt is now made to attack them directly by petition in error. This may be done where the question was raised in the court below and proper exceptions taken. But unfortunately for the plaintiffs in error, the question was not raised in the court below. Neither party objected to trying this case before said pro tem. judge, but all the parties consented thereto. The question of whether said pro tem. judge could legally try this case is now raised for the first time in this court, and we think the question is raised too late. See Hunter's Adm'r v. Ferguson's Adm'r, 13 Kan. 462, 473, and cases there cited."

Section 9, art. 7, of the Constitution authorizes the parties to a suit in the event any judge is disqualified for any reason from trying the same, to agree upon a judge pro tempore, and section 5813, Rev. Laws 1910, contains a similar provision. The office of judge pro tempore is thus recognized both by the Constitution and the statutes of this state, and when the parties below consented that the Hon. John F. Curran should sit as special judge upon the trial of this cause, and he did in fact preside during the trial thereof, he became a de facto judge, and, no objection having been made thereto at or during the trial, his authority cannot be questioned for the first time in this court. The case of Apple et al. v. Ellis, 50 Okla. 80, 150 Pac. 1057, is in conflict with the views here expressed. That case overlooks the opinion in Bradley v. Chestnutt-Gibons

Gro. Co., supra, and in so far as it and later decisions following it are in conflict with the views herein expressed, they are overruled. Litigants should not be permitted to try a case without objection before a special judge, taking chances upon the outcome of the trial, with the intention of availing themselves of the benefits incident to a favorable result, and at the same time be accorded the right to question the validity of such proceedings should an adverse verdict be rendered.

The alleged libel is based upon the publication of five certain articles in the Watonga Herald, a weekly newspaper published in the town of Watonga, Blaine county, of which the defendant was editor, which the plaintiff alleges were false, scandalous, defamatory, and libelous, and were maliciously published of and concerning plaintiff. The article upon which the first count was based was as follows:

"To Joe and Tom: Moral—Time wasted in making nigger evidence is worse than fixing a grand jury or making affidavits. That the grand jury system is a farce and at times can be used by unscrupulous men and crooked politicians to get even with a supposed enemy, was clearly demonstrated during last week's court. Upon investigating the minutes it was discovered that two politicians had given crooked evidence before the grand jury, that they could not substantiate in court. Their names appeared on no indictment and they denied having testified until confronted with the evidence. These crooked politicians had to come out and admit their guilt—that they were responsible for causing the cost to this county of $5,000 or $6,000 in order to try to get even with someone through the medium of the grand jury."

That set out in the second count was as follows:

"Nutty Tom is afraid that Black Pete has something to tell on someone, like he told about his purchase of nigger votes. He might tell Tom whether you and Joe gave the nigger witnesses anything to appear with yourselves before the grand jury to commit perjury. Or perhaps he might let the niggers divulge that themselves. Or he might tell about the letter written to Guthrie to send a judge over here to stick people regardless of guilt or innocence."

That set out in the third count is as follows:

"Lost,—One idiotic featured, broken down, would be politician—commonly known as Grand Jury Joe. Found—Sneaking around the basement of the court house looking for grand jury to lie to—the above described monstrosity."

That set out in the fourth count is as follows:

"A Fit Subject. Affidavit Tom, last issue, clearly indicates that he should be sent to the bug house, the crazy house, the foolish house, the bat house, the looney house, the mad house, the nutty house. If he is not a fit subject for it he would not be accusing his associates before the grand jury, W. B. Piper, of procuring a deed from Estella Tyler. Piper, the man who approached white men and niggers to procure them to lie, should be supported by his chum, Nutty Tom, instead of going back on him. The next thing in order for Nutty to do will be to relate how his companion in arms, Grand Jury Joe, according to the county treasurer's books, kept about a thousand dollars of the county's money for the past five years. 'When rogues fall out, honest men get their dues.'"

That set out in the fifth count is as follows:

"Because Grand Jury Joe and Nutty Tom could not elect city officials to suit them and stand their crooked work, the former requested the Governor to have the State Examiner and Inspector make an investigation. Haskell tells him that there is no law for such investigation and tells him that if he knows of anything wrong, he can file information against the offenders with the county attorney. But he says: 'No, I want a place where I can lie a little and try to get even with someone. I want to go before a grand jury picked out by myself where Nutty Tom and I can lie as much as we please.' Such a pair as Nutty Tom and Grand Jury Joe are worse than any pair of black hand assassins Italy every furnished. They would stab a man in the back at the first opportunity, if they knew they would not be apprehended; a pair of cowardly curs who will not come out in the open and fight like men, but always want to try and trump up something to jab someone through the courts. People of this class are a detriment to any town or community, and everyone who has any regard for manhood, looks upon them as the worst kind of nuisances. Watonga had an investigation of her books of the council last spring by five of the leading business men of the town, who found everything in good shape and made a thorough report."

After declaring on each of the articles as above set out, plaintiff, by way of innuendo, ascribed thereto the meaning thereof as charged by him, and prayed damages. After demurrer to the petition and to each count thereof, defendant answered by way of general denial, and alleged the truth of the matters contained in the articles complained of. Objection was made to the introduction of any evidence under the petition, and at the close of plaintiff's case, demurrer was interposed to the testimony, which was overruled. Defendant urges that the petition did not state a cause of action because the mat-

ters alleged are not libelous per se, and because plaintiff did not allege or prove any special damages. Where the article published is not libelous per se, the plaintiff must allege in his petition facts showing wherein he has sustained special damages. McKenney v. Carpenter et al., 42 Okla. 410, 141 Pac. 779; N. S. Sherman Machinery Co. v. Dun, 28 Okla. 447, 114 Pac. 617. On the contrary, where the words used in the publication are libelous per se, it is not necessary to make such allegations, but plaintiff may allege general damages only. 25 Cyc. 453.

To determine whether the language used in the articles was libelous per se, it was the duty of the court to construe the words used, in their most natural and obvious sense, and give them that meaning which would be ascribed thereto by those to whom they were addressed and which would be understood by them. Bodine v. Times Journal Pub. Co., 26 Okla. 135, 110 Pac. 1096, 31 L. R. A. (N. S.) 147; Hubbard v. Cowling, 36 Okla. 603, 129 Pac. 714; Spencer v. Minnick, 41 Okla. 613, 139 Pac. 130.

It is urged that because plaintiff used innuendo to ascribe a meaning to the articles published, he is estopped to claim that said articles were libelous per se. In 25 Cyc. 452, it is stated:

"The innuendo may be treated as surplusage when it is used in connection with words which are unequivocal and actionable per se; and it is held that where plaintiff, in an action had by innuendo, put a meaning upon the alleged defamatory publication which is not supported by its language or by proof, the court may nevertheless submit the case to the jury if the publication is defamatory per se."

Adopting defendant's theory that the publication pleaded must be judged as to whether it is libelous per se, without the aid of the innuendo, or extrinsic and explanatory circumstances, but by reference to the language of the publications alone, each and all of the articles were libelous per se, and the court did not err in so declaring. Spencer v. Minnick; Bodine v. Times Journal Co.; McKenney v. Carpenter. Section 4956, Rev. Laws 1910, defines libel as follows:

"Libel is a false or malicious unprivileged publication by writing, printing, picture, or effigy or other fixed representation to the eye, which exposes any person to public hatred, contempt, ridicule, or obloquy, or which tends to deprive him of public confidence, or to injure him in his occupation. * * *"

The jury found that each of these articles was published of and concerning plaintiff, and that they were understood by persons who read the same as referring to plaintiff;

and, construing the language used in its most natural and obvious sense and giving it that meaning which would most naturally be ascribed thereto by those to whom it was addressed, it seems clear that the statements used in each and all of them, if believed, would undoubtedly tend to deprive plaintiff of public confidence and esteem and expose him to public hatred, contempt, ridicule, or obloquy. This being true, it was libelous under the statute and was actionable, and it was not necessary for plaintiff to allege or prove special damages.

The court instructed the jury that in the event they should find in favor of the plaintiff upon any count set forth in the petition, the verdict thereon should not be less than $100. This instruction was based upon section 4961, Rev. Laws 1910, which is as follows:

"If there be a verdict by a jury or finding by the court in favor of the plaintiff, the verdict and judgment shall in no case be less than $100 and costs, and may be for a greater sum if the proof justifies the same. And if there be a verdict in favor of the defendant, and the jury shall find that the action was malicious or without reasonable provocation, judgment shall be rendered against the plaintiff and in favor of the defendant for his costs, including an attorney's fee of $100."

It is the contention of defendant that the instruction given was erroneous, and that the statute should be construed as authorizing a minimum verdict in each case or action and not for each instance or act of libel proven. We are unable to find any cases construing a libel statute containing the provision set out, but think the following cases analogous upon principle: In Place v. Norwich & N. Y. Transportation Co., 118 U. S. 468, 6 Sup. Ct. 1150, 30 L. Ed. 134, the Supreme Court construed the words "in no case," found in section 4283 of the United States Statutes, which declared that the liability of the owner of any vessel (for various acts and things mentioned) should "in no case" exceed the value of his interest in the vessel and her freight then pending. It was held that the "case" in which the principle of limited liability was to be applied meant every voyage, and that the fair inference to be drawn from the section was that the voyage defined the limit and boundaries of the cases to which the law was to be applied, and not each particular act. In Theisen v. Johns, 72 Mich. 285, 40 N. W. 727, the Supreme Court of Michigan had under consideration section 2268, How. St., which provided that any person selling liquor to a minor under the age of 18 years should be liable for actual and exemplary damages to the parent "in

such sum, not less than $50 in each case as the court or jury shall determine." It was held that the intention of the statute was to award a recovery in each action or suit, and not for each sale. In the opinion it was said:

"The only remaining question which we need to discuss arises upon the charge of the court. It is claimed by plaintiff's counsel that the statute is to be construed as fixing the amount of recovery at $50 for each sale. The court construed it as meaning for each trial. It is evident that 'in each case' means in each particular instance or cause. * * * It cannot be said that the Legislature, in fixing the minimum of recovery to be had for the violation of this statute, intended to make the penalty for each sale the sum of $50"

—and attention was called to the fact that in another section of the statute provision was made for the recovery of damages in all cases provided for, together with costs of the suit, in an action of trespass on the case before any court of competent jurisdiction. By statute, we are required to give words used in any statute their ordinary interpretation, unless defined by statute. Rev. Laws 1910, § 2194. "Case" is defined in Black's Law Dictionary as:

"A general term for an action, cause, suit or controversy at law or in equity; a question contested before a court or justice; an aggregate of facts which furnishes occasion for the exercise of the jurisdiction of a court of justice." Anderson Dict. of Law; 6 Cyc. 679.

Giving the word "case" the meaning ascribed thereto in the authorities cited, the statute should be construed to mean that a minimum recovery of $100 may be had in each action or suit. This does not prevent a plaintiff from recovering any actual damages that may be proven and such exemplary damages as may be awarded by the jury for each act of libel, and is merely a recognition of the fact by law that in cases where the libel has been proven some damage has been suffered, and fixing the minimum amount of a plaintff's recovery in an action brought to recover such damages. It was error to give the instruction complained of. That such a statute is constitutional was determined by the Supreme Court of Michigan in Cramer v. Danielson, 99 Mich. 531, 58 N. W. 476, where it was held that the act which authorized a minimum recovery in each case for an unlawful sale of intoxicating liquors to minors in that state was valid.

The defendant attacks the statute as being unconstitutional and void and in violation of various provisions of the state and federal Constitution, because provision is

made in the latter part of said section for the recovery of an attorney's fee by defendant in certain prescribed instances. The trial resulted in a verdict in favor of plaintiff, and defendant is not in a position to raise this question. The Supreme Court will not pass upon the constitutionality of an act of the Legislature until there is presented a proper case in which it is made to appear that the person complaining has, by reason thereof, been, or is about to be, deprived of some right or privilege to which he was lawfully entitled, or who is about to be subjected to some of its burdens and penalties. Ins. Co. of North America v. Welch, 49 Okla. 620, 154 Pac. 48; Black v. Geissler, 58 Okla. 335, 159 Pac. 1124.

In their verdict the jury assessed the damages separately upon each cause of action, fixing the amount thereof upon the first and second counts at $100 each and upon the third at $150; upon the fourth at $250, and upon the fifth at $400. From this it appears that the recovery upon the first and second counts was arbitrarily fixed at $100 each in compliance with the instructions of the court, which directed the jury to award the plaintiff, in case they found the publication was made by defendant concerning the plaintiff, a minimum recovery upon each count of $100, irrespective of what the actual damages shown by the evidence might be. They were not permitted to award exemplary damages, and we must presume that the amount allowed upon the first and second counts was because of the instructions of the court, and therefore prejudice has resulted to the defendant by reason of the giving of said instruction. However, we will not reverse the case, if plaintiff will, within —— days remit the sum of $200, in which event the judgment will be affirmed; otherwise the cause will be reversed and remanded for a new trial.

All the Justices concur.