## H. L. BENNETT v. STATE.

No. A-3776. Opinion Filed Feb. 21, 1922.
(204 Pac. 462.)

(Syllabus.)

1. **False Pretenses—Information under "Bad Check" Statute—Sufficiency.**—In an information based on chapter 72, Sess. Laws 1913, sometimes known as the "bad check" statute, it is not necessary to charge in specific terms that the person defrauded relied on the false representations made.

2. **Same—Elements of Offense—Sufficiency of Instructions.** The instructions given relating to the elements of the offense held sufficient.

3. **Evidence—Evidence of Other Offenses to Show Intent.** Evidence that may indicate the commission of other like offenses is not inadmissible where it relates to acts, conduct, or declarations of accused which tend to show a guilty intent to perpetrate the particular offense charged.

Appeal from District Court, Lincoln County; C. M. Feuquay, Judge.

H. L. Bennett was convicted of violating the "bogus check statute" (chapter 72, Session Laws 1913), and sentenced to serve one year in the state penitentiary, and he appeals. Affirmed.

Jarrett & Speakman, for plaintiff in error.

S. P. Freeling, Atty. Gen., and W. C. Hall, Asst. Atty. Gen., for the State.

BESSEY, J. H. L. Bennett, plaintiff in error, in this opinion referred to as the defendant, was by information filed in the district court of Lincoln county, November 29, 1919, charged as follows:

"That H. L. Bennett * * * did then and there willfully, unlawfully, knowingly, and feloniously, and with the intent to cheat and defraud one H. E. Inman by means of a false instrument in writing, to wit, a check, which check is in words and figures as follows, to-wit: 'Depew, Okla., May 2, 1919. The

First State Bank. Pay to H. E. Inman, or order, $15.00, fifteen and no/100 dollars. H. L. Bennett'—offer and pass the said bogus check to the said H. E. Inman and represent to the said H. E. Inman that he, the said H. L. Bennett, had sufficient money in the First State Bank of Depew, Okla., with which to pay said check, and by means and aid of said representations and pretense, which were then and there false, the said H. L. Bennett did then and there willfully, unlawfully, knowingly, and feloniously and designedly, and with intent to cheat and defraud the said H. E. Inman, obtain from the said H. E. Inman the following described property, to wit: One size 12 Elgin watch, movement No. 21575315, in a ten-year gold filled case, of the value of $15, good and lawful money of the United States—whereas in truth and in fact all of said representations and pretenses were false and untrue, and the said H. E. Bennett then and there well knew that the same were false and untrue and the same were made by him, the said H. L. Bennett, to the said H. E. Inman with the intent to cheat and defraud the said H. E. Inman, as aforesaid.''

The statute under which this information was drawn is chapter 72, Session Laws of 1913, often designated the ''bad check statute,'' which reads as follows:

''Every person who, with intent to cheat and defraud, shall obtain, or attempt to obtain, from any other person or persons, any money, property, or valuable thing, by means or by use of any trick or deception, or false or fraudulent representation, or statement or pretense, or by any other means or instrument or device, commonly called the 'confidence game,' or by means or by use of any false or bogus check or by any other written or printed or engraved instrument or spurious coin or metal, shall be deemed guilty of a felony, and, upon conviction, be punished by imprisonment in the penitentiary for a term not exceeding seven years.''

The testimony shows that the defendant, about the 1st of May, 1919, contemplated making a trip to his former home in Kentucky; that on the 2d day of May, 1919, after bank-

ing hours, he went to the jewelry store of H. E. Inman in Stroud, Okla., and purchased a watch from Mr. Inman, in payment for which he gave Mr. Inman a check payable to his order, drawn on the First State Bank of Depew, in the amount of $15; that night the defendant started on his trip to Kentucky; that at that time and for a period of two months or more prior to that time the defendant had no deposit in the bank at Depew; and that the Depew bank refused payment of the check for that reason. From the testimony of Jim West, cashier of the bank, and the testimony of A. L. Feushay and B. Ammerman, merchants of Stroud, witnesses for the state, and from the testimony of the defendant and of W. B. Bennett, his father, it appears that the defendant at this time and shortly prior to this time had given a number of other checks, payable to various persons, drawn on banks in which he had no funds.

This case was, without objections, tried before Hon. C. M. Feuquay, as special judge.

The defendant in his brief urges the following assignments of error:

(1) That the acts and proceedings of the special judge are void because the record does not disclose that the regular district judge was disqualified, nor that the special judge was selected as provided by law or that he was qualified.

(2) That the information is insufficient, in that it does not allege that Inman, the payee of the check, relied upon the representations of the defendant.

(3) That the evidence is insufficient to support the verdict.

(4) Error of the court in instructing the jury, as given in instructon No. 6.

(5)  Error of the court in refusing to give defendant's requested instruction No. 1.

(6)  Introduction of alleged incompetent testimony, over the objections of the defendant.

It does not affirmatively appear in the record that the regular presiding judge of the district court was disqualified to try this case, nor does it appear, except by implication, that the special judge was selected pursuant to agreement of parties. In the case of Kelly v. Roetzel, 64 Okla. 36, 165 Pac. 1150, it was said:

"The office of a judge pro tempore is thus recognized by both the Constitution and the statutes of this state, and when the parties below consented that Hon. John F. Curran should sit as special judge upon the trial of this cause, and he did in fact preside during the trial thereof, he became a de facto judge, and, no objection having been made thereto at or during the trial, his authority cannot be questioned for the first time in this court. [Overruling Apple v. Ellis, 50 Okla. 80, 150 Pac. 1057.]

"Litigants should not be permitted to try a case without objection before a special judge, taking chances upon the outcome of the trial, with the intention of availing themselves of the benefits incident to a favorable result, and at the same time be accorded the right to question the validity of such proceedings should an adverse verdict be rendered."

It is fair to presume that the regular judge was disqualified, and that the parties agreed that Hon. C. M. Feuquay should sit as special judge; otherwise an objection would have been interposed at the time. Without further discussion or the citation of additional authorities, we think that the doctrine as announced in the case of Kelly v. Roetzel, supra, is sound and is applicable to the situation here involved.

It is next urged that the information is insufficient, because it does not allege that Inman relied upon the represent-

ations made. A careful reading of the statute above quoted discloses that such an allegation is unnecessary to constitute the offense here sought to be charged. A mere attempt to defraud is sufficient under this statute. Here the averments were that the defendant actually obtained from another money or property by means of a bogus check, constituting the offense under this statute. This was not a prosecution for obtaining money or property by false pretenses, as under the old English statutes, where it was usually necessary to allege and prove that the person defrauded relied upon the representations made. Under this statute, quoted above, we think this allegation was unnecessary. Douglas v. State, 15 Okla. Cr. 648, 179 Pac. 947; Williams v. Territory, 13 Ariz. 27, 108 Pac 243, L. R. A. (N. S.) 1032.

Our statute seems to have been borrowed from the 1901 General Statutes of Arizona (Pen. Code 1901, § 489); at any rate the language is identical. In the Arizona case it was held that obtaining money by means of a check upon a bank in which the drawer never had funds, or which he had no reason to believe would honor his check, is within the statute making it a felony to obtain money by the use of any false' or bogus check. There was no allegation in the information in the Douglas Case, which was held sufficient, that the party defrauded relied upon the false representations. It seems clear, therefore, that the allegations in the information were sufficient to constitute the crime as outlined by our statute, and that the proof supporting the same is sufficient.

Instruction No. 6, of which defendant complains in his brief, is in part as follows:

"If you find from the evidence in this case, beyond a reasonable doubt, that on the 2d day of May, 1919, in this county and state, the defendant, H. L. Bennett, with the intent to cheat and defraud one H. E. Inman, by means of a false instrument in writing, a worthless and bogus check, as alleged in the in-

formation in this case, heretofore read to you, obtained from the said H. E. Inman a size 12 Elgin watch, of the value of $15, and that the said defendant knew at the time he gave the said H. E. Inman the said check that it was a worthless and a bogus check, and that he gave said check with the intention of cheating and defrauding the said H. E. Inman, your verdict should be that he is guilty as charged in the information."

For the reasons before stated we think that this instruction was fair to the defendant and covered the essential elements of the crime. The offense charged is statutory, and it is not incumbent upon the state to prove any additional element of the crime commonly known as obtaining money by means of a false pretense beyond those specifically stated in the statute. We assume that one of the purposes of the enactment of this statute was to discourage and punish "bad check artists," and to cover cases where a charge of the crime of obtaining money by means of false pretenses, under section 2694, R. L. 1910, might not apply.

Section 2694, R. L. 1910, is as follows:

"Any person who, with intent to cheat or defraud another, designedly, by color or aid of any false token or writing, or other false pretense, obtains the signature of any person to any written instrument, or obtains from any person any money or property, is punishable by imprisonment in the penitentiary not exceeding three years or in the county jail not exceeding one year, or by a fine not exceeding three times the value of the money or property so obtained, or by both such fine and imprisonment."

Defendant insists that if the information stated an offense at all, it stated an offense under both statutes, and that he was entitled to have his offered instruction No. 1 given, providing for the lesser penalty, upon the theory that, where there is any doubt as to which statute applies, the question should be resolved in favor of the defendant, and that he should be given the benefit of the statute providing the lesser penalty, citing

Bowes v. State, 8 Okla. Cr. 277, 127 Pac. 883, wherein it was held that—

"When a doubt exists as to whether an information * * * charged a felony or a misdemeanor, the defendant should be given the benefit of the doubt, and the offense charged should be held to be a misdemeanor."

In the Bowes Case the defendant was charged with inducing a witness to absent himself from the jurisdiction of the court to prevent his testifying in a criminal prosecution then pending. Section 2195, Compiled Laws 1909, makes it a felony to prevent or dissuade a person who has been duly summoned as a witness from attending court, pursuant to such summons. Section 2213, Compiled Laws 1909, makes it a misdemeanor for any person to maliciously, by deceit or fraud, or by use of threats, malice, or violence, prevent the attendance of any witness in any action or proceeding. These statutes provide for the punishment in two ways of what might be the same offense and under the circumstances of the case the court was justified in making the declaration that, where there was any doubt as to which offense was charged, the defendant should be given the benefit of that doubt. It seems that in the instant case there could be no occasion for doubt. The defendant and his counsel and the court were sufficiently apprised of the nature of the crime charged, and that it came within the purview of the 1913 statute, and the court committed no error, therefore, in refusing the instruction requested by the defendant. In our opinion the defendant was not tried under section 2694, R. L. 1910, and was not entitled to the lesser penalty therein provided.

Lastly, the defendant urges that the court erred in permitting the introduction of testimony tending to show that the defendant, about this time, had obtained money by the issuance of other bad checks. Ordinarily other offenses may not be shown except where they tend to explain or throw some light

on the offense charged. It may be conceded that it would be no crime to innocently or inadvertently give another a worthless check, but evidence indicative of a contrary purpose is admissible showing acts, conduct or declarations of the accused which tend to establish intention, or motive, notwithstanding the fact that such evidence may disclose a different or separate offense. Here the defendant claimed that the check was negotiated in good faith and in a legitimate manner. Under such circumstances the state had a right to show, if it could, that it was not done in good faith, but that, on the contrary, the defendant was a habitual bad check artist, and intended to practice deceit in this particular instance. Montgomery v. State, 13 Okla. Cr. 652, 166 Pac. 446; Bond v. State, 9 Okla. Cr. 697, 129 Pac. 666; Carter v. State, 6 Okla. Cr. 233, 118 Pac. 264; 8 R. C. L. "Criminal Law," § 197, and cases cited; notes to People v. Molineux (N. Y.) 62 L. R. A. 193.

Finding no prejudicial error in this record, the judgment of the trial court is affirmed.

DOYLE, P. J., concurs.

MATSON, J., not participating.