# A. C. GUNTHER v. STATE.

No. A-6523.   Opinion Filed March 6, 1929.
(276 Pac. 237.)

L. D. Mitchell, Lee G. Gill, and C. C. Andrews, for plaintiff in error.

Edwin Dabney, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

CHAPPELL, J.   The plaintiff in error, hereinafter called defendant, was convicted in the district court of Tulsa county of the crime of procuring money by passing a false or bogus check, and was sentenced to serve a term of five years in the state penitentiary.

The undisputed facts in the case substantially appear to be that the defendant was living in Tulsa, Okla.,

part of the time at the Albany Hotel and part of the time at the Tulsa Hotel, and was pretending to be engaged in the business of coal mining under the name of Gunther & Co. The defendant opened bank accounts in a national bank of Pittsburg, Kan., and in the State Bank at Collinsville, Okla., in the name of Gunther & Co., with instructions that no money should be paid out of said accounts except upon checks signed by A. C. Gunther. The account in the Pittsburg bank ran for over a year and in the beginning the deposits were in small sums, generally in amounts less than $100. The account with the Collinsville bank revealed the same condition. The defendant had no banking account with any bank in the city of Tulsa where he lived. The defendant appeared to be doing what in banking business is known as kiting checks; that is, the defendant would give a check to one of the two hotels at which he stayed in Tulsa on either the Pittsburg or the Collinsville bank and then telegraph a portion of the money received on the check to the bank in order to meet the check. As it usually required three to five days for the checks to clear and reach the banks on which they were drawn, the defendant was enabled to have the use of the money for from three to five days. But the usual result of this system is for the party kiting checks to increase them in amounts and frequency until any one following that system who has established a credit would be able to cash a large amount of checks with no funds to meet them. The record discloses that in the latter part of April or May, 1926, the defendant's checks had increased until he had out approximately $4,000 in checks, and that he then failed to telegraph any money to take the checks up.

The defendant assigns numerous errors, but consolidates assignments Nos. 13 to 21, inclusive, which assign-

ments deal with the validity of chapter 33, of the Session Laws of Oklahoma 1923, which reads as follows:

"Every person who, with intent to cheat and defraud, shall obtain or attempt to obtain from any person, firm or corporation, any money, property, or valuable thing, of the value of $20, or less, by means or by use of any trick or deception, or false or fraudulent representation, or statement or pretense, or by any other means or instrument or devise commonly called the 'confidence game,' or by means or use of any false or bogus checks, or by any other written or printed or engraved instrument or spurious coin, shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine not to exceed $100, or by imprisonment in the county jail for not more than 30 days, or by both such fine and imprisonment. If the value of the money, property or valuable thing referred to in the preceding paragraph, be more than $20, any person convicted hereunder shall be deemed guilty of a felony and shall be punished by imprisonment in the state penitentiary, for a term not exceeding seven years, or by a fine not to exceed $500, or by both such fine and imprisonment. The term 'false or bogus check' shall include checks or orders given for money or property which are not honored on account of insufficient funds of the maker to pay same, as against the maker or drawer thereof, the making, drawing, uttering or delivering of a check, draft or order, payment of which is refused by the drawee, shall be prima facie evidence of intent to defraud and the knowledge of insufficient funds in, or credit with, such bank or other depository; provided, such maker or drawer shall not have paid the drawee thereof the amount due thereon, together with the protest fees, within 5 days from the date the same is presented for payment; and, provided, further, that said check or order is presented for payment within 30 days after same is delivered and accepted. The word 'credit' as used herein shall be construed to mean an arrangement or understanding with the bank or depository, for the payment of such check, draft or order."

The defendant contends that under this section the prosecution was prematurely brought, in that it appears

that the same was commenced before the five days allowed by the statute for the defendant to make payment of the check in question. This contention is without merit, for the reason that the record shows that the information was filed in the district court of Tulsa county on the 16th day of June, 1926, and charges the defendant, in conjunction with one E. P. Hilliard, with passing a bogus check for $100 on the 19th day of May, 1926.

The defendant further contends, in connection with the five days' notice, that the first proviso appearing in the act modifies the entire act instead of the preceding sentence in which the clause is incorporated. The preceding clause and the proviso read as follows:

"The term 'false or bogus check,' shall include checks or orders given for money or property, which are not honored on account of insufficient funds of the maker to pay same, as against the maker or drawer thereof, the making, drawing, uttering or delivering of a check, draft or order, payment of which is refused by the drawee, shall be prima facie evidence of intent to defraud and the knowledge of insufficient funds in, or credit with, such bank or other depository; provided, such maker or drawer shall not have paid the drawee thereof the amount due thereon, together with the protest fees, within five days from the date the same is presented for payment."

It is apparent from the act that it was the intent of the Legislature to make it a criminal offense for any person to obtain money or anything of value by giving a check on a bank in which he had no funds at the time to meet the same, or which funds at the time were insufficient to pay the check. The indorsement of the check by the drawee, "insufficient funds," would be prima facie evidence of the intent to defraud, provided that the drawer did not pay the drawee the amount of the check with protest fees within five days from the date of the presentment thereof for payment. If, however, the draw-

er did pay the check within said five days, then it would be incumbent upon the state, as held in Douglas v. State, 15 Okla. Cr. 648, 179 P. 947, to prove the corpus delicti; that is, the existence of no funds or of insufficient funds beyond a reasonable doubt to pay the check.

In this case the state did prove as part of its case in chief, by the banker himself, that the defendant at the time of the drawing of said check had no funds in said bank with which to pay the same. The defendant himself also admitted during the trial that at the time he gave the check there was no money in the bank to cover the same. So that it is immaterial as to the defendant whether or not this proviso has reference to the definition of a false or bogus check or merely limits that part of the section referring to the prima facie nature of the evidence. Because of the uncertainty created by Kilgore v. State, 25 Okla. Cr. 69, 219 P. 160, this court now holds that the amendment of section 2146 by chapter 33, Session Laws 1923, had reference only to the prima facie character of the evidence and does not define what a false and bogus check is.

It is further contended by the defendant that the evidence is insufficient to support the conviction. The proof shows that the defendant did not have the funds with which to meet this check. In Douglas v. State, supra, this court held that obtaining money by such a check is within the meaning of the act. The state proved that the defendant got the currency on the check. The defendant admitted that he knew at the time he drew the check that he did not have the money in the bank to meet it; the intent to defraud is therefore inferred.

The further contention of the defendant that the evidence of the passing of other bogus checks was inadmissible, incompetent, and prejudicial is without merit.

This court has repeatedly held that the state may show other and similar transactions for the purpose of establishing a plan or scheme to defraud.

The defendant assigns numerous other grounds of error, but they are all without merit. The guilt of the defendant was proved beyond a reasonable doubt, and there is no reversible error in the record.

The judgment is therefore affirmed.

EDWARDS, P. J., and DAVENPORT, J., concur.