BEN C. LOUGHRIDGE v. STATE.

No. A-9272.   Oct. 15, 1937.
(72 P. 2d 513.)

34

Mathers & Mathers, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Tom Finney, Asst. Atty. Gen., and Lewis R. Morris, Co. Atty., for the State.

BAREFOOT, J. The defendant was charged by information in the district court of Oklahoma county with the crime of "obtaining money by means and use of a false and bogus check," was tried and convicted and sentenced to serve a term of two years in the penitentiary, and from this judgment and sentence he has appealed.

The first error complained of by defendant is that the proof shows a case of forgery and not one of obtaining money by means of a bogus check, and that he should have been tried, if at all, for forgery, and not upon the other charge, and that for this reason the verdict of the jury is contrary to law.

The defendant was charged in the information with the crime of "obtaining money by means and use of a certain forged and bogus check," in that he obtained from the Tradesmen's National Bank of Oklahoma City the sum of $225 by means and use of a certain forged and bogus check.

To sustain this charge the evidence on behalf of the state revealed that the defendant resided in Ardmore, Carter county, Okla.; that for many years he and his father had been acquaintances and friends of E. A. Walker, the president of the Tradesmen's National Bank of Oklahoma City, who had also resided at Ardmore for many years and was president of the First National Bank of Ardmore. The defendant had been formerly connected

as bookkeeper with the Loughridge Freight Lines of Ardmore, but had ceased this connection prior to the charges here made. The defendant came from Ardmore to Oklahoma City, and went to the Tradesmen's National Bank between 9 and 10 o'clock on the morning of December 22, 1933, where he met Mr. Walker; renewing his acquaintance with him and telling him he was running a truck line in Ardmore; and at this time told him he had just seen a suit of clothes in a window that could be bought for $25, that it was a bargain, and that a suit of the same kind would cost $35 or $40 in Ardmore, and asked Mr. Walker if he would O. K. a check which he had already written out for that amount on the First National Bank of Ardmore, and of which Mr. Walker was the president. Mr. Walker asked the defendant: "Ben, are you sure you have got the money down there?" and the defendant replied: "Oh, yes. I wouldn't write a check without having the money," and at the same time defendant exhibited a bunch of checks on the Ardmore bank that had been paid and returned to him as vouchers. Mr. Walker, after further conversation with the defendant, and calling his attention to the fact that the check was written out of the ordinary, "The $25 was too far over to the right," the defendant replied, "Well, you know me," and Mr. Walker said, "Yes, I think I do." He then O.K.'d the check which he says was for $25. The next day, Saturday, December 23d, the same check was presented at the teller's window, but instead of being for $25 was for $225, and having the O.K. of Mr. Walker thereon was paid by the teller, Mr. Pierson. On the same day that the check was paid the teller, Mr. Pierson, presented the check to Mr. Walker, and said: "I am a little suspicious of this check. It was O.K.'d yesterday and not presented until today." Mr. Walker then for the first time observed that the check had been raised

from $25 to $225. A photostatic copy of the check is attached to the case-made and a casual examination of the same reveals that it had been raised as above stated. The check was forwarded to the First National Bank of Ardmore on the date it was received, and was by that bank protested and unpaid and returned to the bank at Oklahoma City. Ed Sandlin, the cashier of the First National Bank at Ardmore, testified that the Loughridge Freight Lines had an account in the bank there which was closed by the books of the bank on February 21, 1933, which was nearly ten months prior to December 22, 1933, the date when the check was cashed in Oklahoma City. He also testified that the defendant had no personal account at the bank either before or after that date. Mr. Walker testified that the defendant came to Oklahoma City some two or three months after the check had been protested, and had a conversation with him at his office in the Tradesmen's National Bank, and in the presence of Mr. C. W. Hurd, of Ardmore. That the defendant said he wanted to settle it, and that he thought in the course of time he could pay it off if he would drop the prosecution; that he told him, "That the matter was in the hands of the county attorney, and he would have to take it up with him; that he would not accept money after a case was in court for prosecution," and further said: "Ben, what in the world did you mean by raising that check that way? I was never more surprised in my life to see an intelligent man like you do a thing like that." The defendant replied that "he had been drinking some at the time and he thought he would get home before the check got there; he did not mean to beat me, and he would like to pay it off if given time and opportunity." This testimony was corroborated by the witness C. W. Hurd, of Ardmore.

The defendant, testifying in his own behalf, admit-

ted writing and cashing the check. He testified that he came from Ardmore to Oklahoma City, arriving there at about 8 p. m. Friday night, December 22, 1933, and that he wrote the check that night at the hotel and got it O.K.'d by Mr. Walker about 9 o'clock Saturday morning, December 23d; that it was for $225 at the time it was O.K.'d by him; that he immediately cashed it, and that it was not changed in any way; that a part of the money was used for the purchase of a suit of clothes; that he intended to use the other money to pay off a loan on a diamond ring he had with a loan company in Ardmore, for $75, and was going to sell the ring for $150 and would make $75. He also denied the conversation as related by Mr. Walker with reference to trying to settle the case by paying it off. He said he was placed in jail Saturday night and did not get out of jail until Tuesday, December 26th, and went to see the officials of the First National Bank at Ardmore at that time, and they referred him to Mr. Walker; that he saw Mr. Walker some weeks thereafter. Witnesses were called testifying to the good character of defendant prior to the time these charges were instituted against him.

The statute under which defendant is prosecuted (Okla. St. 1931, § 2086; 21 Okla. St. Ann., § 1541), reads as follows:

"Every person who, with intent to cheat and defraud, shall obtain or attempt to obtain from any person, firm or corporation, any money, property, or valuable thing, of the value of twenty ($20) dollars, or less, by means or by use of any trick or deception, or false or fraudulent representation, or statement or pretense, or by any other means or instrument or device commonly called the 'confidence game,' or by means or use of any false or bogus checks, or by any other written or printed or engraved instrument or spurious coin, shall be guilty of a misdemeanor and upon conviction thereof shall be punished by

a fine not to exceed one hundred ($100) dollars, or by imprisonment in the county jail for not more than thirty (30) days, or by both such fine and imprisonment. If the value of the money, property or valuable thing referred to in the preceding paragraph, be more than twenty ($20) dollars, any person convicted hereunder shall be deemed guilty of a felony and shall be punished by imprisonment in the state penitentiary, for a term not exceeding seven (7) years, or by a fine not to exceed five hundred ($500) dollars, or by both such fine and imprisonment. The term 'false or bogus check' shall include checks or orders given for money or property which are not honored on account of insufficient funds of the maker to pay same, as against the maker or drawer thereof, the making, drawing, uttering or delivering of a check, draft or order, payment of which is refused by the drawee, shall be prima facie evidence of intent to defraud and the knowledge of insufficient funds in, or credit with, such bank or other depository; provided, such maker or drawer shall not have paid the drawee thereof the amount due thereon, together with the protest fees, within five days from the date the same is presented for payment; and, provided, further, that said check or order is presented for payment within 30 days after same is delivered and accepted.

"The word 'credit,' as used herein, shall be construed to mean an arrangement or understanding with the bank or depository, for the payment of such check, draft or order."

This statute has been construed by this court both before and since it was amended by chapter 33, Sess. Laws 1923. It is useless to quote from these cases, and we merely cite them as follows: Gunther v. State, 42 Okla. Cr. 129, 276 Pac. 237; Mason v. State, 23 Okla. Cr. 111, 212 Pac. 1028; Kilgore v. State, 25 Okla. Cr. 69, 219 Pac. 160; State v. Baxley, 40 Okla. Cr. 361, 269 Pac. 326; Bennett v. State, 21 Okla. Cr. 27, 204 Pac. 462; Beach v. State, 28 Okla. Cr. 348, 20 Pac. 758. A reading of these cases

will immediately convince one that the construction placed upon this statute by this court has been a liberal one, giving it force and effect. The question involved here is: Did this defendant, by fraud and deceit, receive from the Tradesmen's National Bank, without any right, its funds for his own use? A reading of the testimony in this case immediately answers this question. The verdict of the jury finding the defendant guilty is a finding that the testimony offered by the state is true. If it was true, then this defendant, with intent to deceive and defraud, obtained from the bank the $225 as charged. Under this testimony the defendant knew at the time he presented the check that it would not be paid; because he knew that neither he nor the company he was supposed to represent had any funds in the bank, and that the account had been closed 10 months prior to the giving of the check. In answer to an inquiry as to whether he had the funds in the bank, he answered he did. In addition to the statements made by him, he took from his pocket a bunch of canceled checks in a further attempt to deceive. These facts, coupled with the alteration of the check and changing it from $25 to $225, shows an absolute intent on the part of the defendant to cheat and defraud the bank of this money. Certainly the thought in his mind that he might some day pay it back should not relieve him from the penalty of this crime. There is no merit to the contention that the evidence of the state showed this to be a forgery, and therefore the defendant could not be prosecuted under this statute. The fact that the defendant might have been charged with forgery is no reason for his not being charged under this statute. It has often been held by this court that evidence is admissible upon a trial in a criminal case which tends to prove the defendant guilty of the crime with which he is charged, although it also may prove or

tend to prove another separate and distinct crime. This law is supported by the very cases cited in the brief of defendant. See Miller v. State, 9 Okla. Cr. 255, 131 Pac. 717, L.R.A. 1915A, 1088; Hunter v. State, 3 Okla. Cr. 533, 107 Pac. 444; McLaughlin v. State, 18 Okla. Cr. 627, 197 Pac. 717; Littrell v. State, 21 Okla. Cr. 466, 208 Pac. 1048; Sledge v. State, 40 Okla. Cr. 421, 269 Pac. 385; Carmack v. State, 44 Okla. Cr. 171, 279 Pac. 964. See, also, 25 C. J., p. 658, and State v. Stewart, 9 N.D. 409, 83 N.W. 869. In 35 A.L.R. p. 360, the editor, in a note, says:

"One who knowingly presents a forged check to a bank, and obtains money thereon from the cashier, is guilty of obtaining money by false pretenses. Reg. v. Prince, [1868] L.R. 1 C.C. (Eng.) 150, 11 Cox, C.C. 193, L.T.N.S. 364, 38 L.J.Mag.Cas.N.S. 8, 17 Week. Rep. 179.

"And in Reg. v. Martin, [1879] L.R. 5 Q.B.Div. (Eng.) 34, 41 L.T.N.S. 531, 14 Cox, C.C. 375, L.J.Mag.Cas.N.S. 11, 28 Week. Rep. 232, 44 J.P. 74, where the conviction of forgery of one who gave, in payment of property, a worthless check signed with a fictitious Christian name, was quashed upon the ground that it was not a forgery, it was stated that he was guilty of the offense of obtaining property by false pretenses."

From the above findings, it is the order of the court that the judgment of the district court of Oklahoma county is affirmed.

DAVENPORT, P. J., and DOYLE, J., concur.