MARIE RICH, ADMINISTRATRIX AD PROSEQUENDUM AND GENERAL ADMINISTRATRIX OF THE ESTATE OF JOHN RICH, PLAINTIFF, v. STATE OF NEW JERSEY, COLLEGE OF MEDICINE AND DENTISTRY OF NEW JERSEY, A/K/A MARTLAND HOSPITAL, SUE BROWN, ADMINISTRATOR, PATRICIA BERFORD, WALLACE CALDWELL AND TITUS ANGEULO, JOINTLY, SEVERALLY AND/OR IN THE ALTERNATIVE, DEFENDANTS.

Superior Court of New Jersey
Law Division Essex County

Decided October 12, 1979.

*Mr. Althear A. Lester* for plaintiff (*Messrs. Lofton & Lester,* attorneys).

*Mr. Thomas F. Marshall,* Deputy Attorney General, for defendant (*Mr. John J. Degnan,* Attorney General, of New Jersey, attorney).

O'NEIL, J. S. C.

A post-judgment motion requires interpretation of a previously unconstrued section of the 1972 Tort Claims Act, *N.J.S.A.* 59:9–5, which provides that

In any action brought against a public entity or a public employee under this act, the court may, in its discretion, award a successful claimant (a) costs ordinarily allowable in the private sector (b) expert witness fees not exceeding a total of $100.00 and (c) reasonable attorney's fees; provided however that there

shall be no such recovery in any case where damages are awarded for pain and suffering.

The suit was brought by a 71-year-old widowed mother for the death of John Rich, her unmarried 44-year-old son, in Martland Medical Center in Newark in November 1976, after a scalding attributed to the negligence of a hospital attendant. At that time the hospital was run by the College of Medicine and Dentistry of New Jersey which had been authorized to acquire it by a provision (*N.J.S.A.* 18A:64G–17) of the Medical and Dental Act of 1970 (*L.*1970, *c.* 102; *N.J.S.A.* 18A:64G–1 *et seq.*) which created the college. Since the act designated the college as a state agency in the Department of Higher Education (*N.J.S.A.* 18A:64G–3), but without the power to sue and be sued (*N.J.S.A.* 18A:64G–6), the "public entity" which was sued was the State itself (*N.J.S.A.* 59:1–3).

The complaint had two counts, a survival action (*N.J.S.A.* 2A:15–3) seeking recovery for the decedent's pain and suffering, and one for wrongful death (*N.J.S.A.* 2A:31–1) asking compensation for the mother's economic loss. Pretrial negotiations with the Attorney General's department led to a concession of negligence and proximate cause, and thus of liability as well. *N.J.S.A.* 59:2–2. There is said to have been a recommendation of a $30,000 settlement, but this failed of approval by the Attorney General. The matter thus went to trial as to damages only. The jury returned verdicts of $10,000 in the survival action and $2,500 in the death action, and judgment for $12,500 was entered without prejudgment interest *N.J.S.A.* 59:9–2. A motion for an *additur*, or in the alternative for a new trial, was timely made. Joined with it was a motion under *N.J.S.A.* 59:9–5 for allowance of costs, witness fee and an attorney's fee. An affidavit supporting the motion listed disbursements of $1,876.75. Of these, $1,500 was paid to the expert medical witness (of which only $100 would be allowable in any event

under the statute), and roughly $200 was for legitimate disbursements not taxable.

The evidence was that decedent had had difficulties years before with both drugs and alcohol, was in an advanced stage of cirrhosis of the liver and, when admitted to Martland in August 1976, was in serious condition with simultaneous oral and anal hemorrhages. Several weeks of treatment relieved the acute physical symptoms but there were psychotic manifestations, and he was transferred to the psychiatric ward at Martland where he remained for more than a month. On the evening of November 1 he had two incidents of incontinence, after each of which he was led by an attendant to a tub and bathed. On the second occasion, after he had been placed in the tub with the water running, the attendant was called away and upon his return found the decedent badly scalded around the thighs, buttocks and groin. He was transferred back to a medical ward, treated for another two weeks and died.

There was also evidence that for several years before his death decedent had made progress against his earlier addiction problems. After hospitalizations at Skillman and elsewhere he went on a methadone maintenance program, and in May 1973 was hired by the City of Newark in the Sanitation Department. He was a satisfactory employee, but in January 1975 he was injured on the job and was out on disability thereafter. His annual salary at the time of the injury was $8,278.

He resided with his mother in a public housing project, but also stayed frequently at the home of a married sister in Newark. When working he had given his mother $25 to $35 a week, and after the accident it was said he contributed the same amount to her out of each disability check. He also helped with household chores and shopping errands.

A New York physician who had done special research on liver conditions in alcoholics and drug addicts testified for plaintiff and discussed the variable life expectancies of patients suffering from alcoholic cirrhosis. He referred to a Boston study of a

group of such patients where the mean survival time had been three years. Sixty percent of the study group were still surviving five years after the study had begun. Indications were that the minimum five-year survival rate dropped to 40% if a patient resumed drinking.

■ The motion addressed to the damages was denied from the bench because a jury could rationally have found that decedent's prospects for continued life and contributions to his mother were limited. The sorry state of his health at the time of his admission, his past history and the negative inferences which might have been drawn from the expert medical testimony lent support to the verdict. A miscarriage of justice did not appear. *R.* 4:49–1.

The construction issue arose from the question whether the word "case" in the above-quoted section of the Tort Claims Act refers to the whole lawsuit, as the State contends, or to each of two separate causes of action embraced in the complaint, as plaintiff argues. In the death action there was recovery only for economic loss (including about $1,400 funeral expense), and not for pain and suffering, and therefore, her counsel urges, the statute permits a counsel fee to be added to the recovery in that cause of action only. He asks that 20% of a reasonable counsel fee for the whole proceeding be added to the verdict on that count, that being the ratio of the $2,500 recovery thereon to the total $12,500 award.

■ An examination of the *Rules governing the courts of New Jersey* discloses almost no use of the word "case." There are multiple references to "trials," "proceedings," "actions," "causes of action" and "claims". However, attention is given to "cases" only in *R.* 1:2–5, which identified the proceedings which are to be given preference in scheduling for trials, hearings or arguments. In that context the word "case" obviously refers to whole lawsuits or appeals and not to the several issues or causes of action which may be presented. "Case" thus would be synonymous with "action" (the word used in the opening phrase

of *N.J.S.A.* 59:9–5), which on the civil side is commenced by filing a complaint. *R.* 4:2–1 & 2. By contrast, individual causes of action or the several counts in a single complaint, seem to fit better into the concept of a "claim" as used in *R.* 4:7. Likewise, *R.* 4:36, 4:37 and 4:38 dealing, respectively, with trial calendars, dismissals and consolidations, all support the interpretation that an "action" is a total lawsuit or "case."

Several definitions of "case" appear in *Black's Law Dictionary* (4 ed.rev. 1968):

> A general term for an action, cause, suit, or controversy, at law of in equity; a question contested before a court of justice; *an aggregate of facts* which furnishes occasion for the exercise of the jurisdiction of a court of justice. Quoted with approval in *Kelly v. Roetzel,* 64 *Okl.* 36, 165 *P.* 1150, 1153. See, also, *Gebhard v. Sattler,* 40 *Iowa* [152] 156; *Martin v. Hunter* 1 *Wheat.* [304] 352, 4 *L.Ed.* 97. A controversy that is litigated. *City of Akron v. Roth,* 88 *Ohio St.* 456, 103 *N.E.* 465, 467. A cause of action. *Strother v. Union Pac. R. Co., D.C.Mo.,* 220 *F.* 731, 732; *Colla v. Carmichael U–Drive Autos,* 111 *Cal.App.* [*Supp.*] 378 [784], 294 *P.* 378, 380. [Emphasis supplied]

Only the last of the several alternative definitions supports plaintiff's thesis.

Research has disclosed almost no attention in New Jersey to this kind of distinction. The sole exception is the 145-year-old decision in *Steamboat and Canal Co. v. Baldwin,* 14 *N.J.L.* 440 (Sup.Ct.1834), which supports the State's view. It dealt with a procedural requirement that an appellant swear that he had a "just and legal defense on the merits of the case." An adversary sought to dismiss an appeal partly because the filed affidavit referred to the merits of the *"suit."* In rejecting this contention Justice Ford said:

> But case and suit mean the same thing; it cannot be on the merits of the case, without being on the merits of the suit. [at 443]

More recently the same interpretation was advanced in *Wetmore v. Wrynn,* 32 *Conn.Super.* 249, 349 *A.*2d 857 (Super.Ct. 1974):

. . . The 'case' is the lawsuit, the cause of action, or the matter as a whole. By no stretch of the imagination or attenuation of language can it be taken to mean parts of cases . . . In Webster, Third New International Dictionary, 'case' is defined in one of its meanings as 'a suit or action in law or equity'. Does not common sense dictate that a 'case' is not part of a case? [349 A.2d at 860]

The same literal construction would apply if the word "case" in the statute were regarded as used in the colloquial, nontechnical sense of being an instance of something else. As previously noted, the work "action" as used in the court rules appears to be synonymous with the whole lawsuit rather than with its component claims or causes of action.

In addition to the probable literal meaning of the terms, evidence is available of what the draftsmen intended by the language of the cited section. The 1972 New Jersey Tort Claims Act was adopted by the Legislature after having had submitted to it by the Attorney General a study and report by the Attorney General's Task Force on Governmental Immunity, which has been used by the Supreme Court is construing the act. *Malloy v. State*, 76 *N.J.* 515 (1978). The comment of the Task Force on *N.J.S.A.* 59:9–5 reads:

With the exception of aggravated circumstances where pain and suffering is allowed, the underlying policy as to damages in this act is to reimburse an injured claimant to the full extent of his present and projected economic loss. Consistent with this thesis, discretion is vested in the trial judge to compensate a successful claimant against either a public entity or a public employee for the reasonable amount of his attorney's fees and for $100 worth of his expert witness fees. This is done in order to insure that a claimant is compensated for virtually all of his economic loss.

The objective of the draftsmen would be best accomplished in this, and probably in similar cases, by giving the word "action" and "case" the meaning of the whole suit. The comment recognizes that a recovery for pain and suffering does not compensate for an economic loss. Where there is recovery for pain and suffering the legislation considers the recovering party as able to pay for the expense of the whole litigation out of the

recovery on this item. However, when there is recovery only for economic loss, the intent is not to reduce the compensatory aspect of that recovery by requiring counsel fees and litigation expenses to be paid out of this economic recovery. In the present case the recovery for pain and suffering is large enough to absorb a contingent fee of $3,847 under *R.* 1:21–7 and the disbursements, and still leave a balance to plaintiff on the count for pain and suffering. The economic recovery need not be invaded.

It is noted in passing that the above-quoted report refers to "aggravated circumstances where pain and suffering is allowed." It might be suggested that an inquiry was intended in each case as to the degree of aggravation. However, it appears that the norm for aggravation is expressed in *N.J.S.A.* 59:9–2(d), which bars any award against a public entity or public employee for pain and suffering resulting from any injury except in the case of "permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $1,000." Curiously, this criterion does not expressly include the event of death which, of course, does result in "permanent loss of a bodily function." "Aggravation" exists when the Tort Claims Act's threshold for recovery for pain and suffering is crossed, because its criteria are more demanding than those in the No-Fault Act, *N.J.S.A.* 39:6A–8. It is not literally clear whether the $1,000 of medical expenses is a necessary condition for recovery in each of the circumstances expressed in the cited subsection or whether it applies simply to permanent disfigurement or dismemberment or both. In the present case, although no evidence was received on the point or any issue made of it, it would seem that the cost of medical treatment for the burn must have exceeded $1,000. *N.J.S.A.* 59:9–2 does not exclude hospital expenses, X-rays and other diagnostic expenses from the items whose cost satisfies the threshold as does its no-fault counterpart.

If the choice between the two constructions were to appear as evenly balanced, the State's proffered meaning would prevail. The draftsmen's report tells us that *N.J.S.A.* 59:2–1(b), providing that any liability of a public entity established by the act is subject to any available immunity, "is intended to insure that any immunity provisions provided in the act or by common law will prevail over the liability provisions." In *Malloy v. State,* *supra,* the Supreme Court found the expression of this particular purpose to be a useful decisional tool.

The mother, as administratrix in this case, is the single "successful claimant." Although she sues in the wrongful death count in a technically different representative capacity, the recovery on that count is payable to her as general administratrix, *N.J.S.A.* 2A:31–6. She is probably the individual beneficiary of both recoveries. As the only dependent she is entitled to the recovery in the death action *N.J.S.A.* 2A:31–4. The decedent was survived also by two sisters who would be entitled to share in the proceeds of the survival action, *N.J.S.A.* 3A:4–4, but the one of them who testified at the trial indicated that the total net recovery in any event would in fact go to the mother.

Plaintiff's motion for an additional award pursuant to *N.J.S.A.* 59:9–5 is denied.