THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. RALPH S. HUMPHRIES and Another, Appellants.

First Department, May 24, 1929.

*Edward I. Kaplan* of counsel [*Marks Wolff* with him on the brief], for the appellants.

*Michael J. Driscoll, Deputy Assistant District Attorney,* of counsel [*Joab H. Banton, District Attorney*], for the respondent.

MARTIN, J. The information charges that the defendants on the 30th day of January, 1928, with intent to defraud one Margaret J. Collins, unlawfully did make, draw, utter and deliver to her a check for $808, knowing at the time of such making that they were without sufficient funds to pay the check.

Margaret J. Collins, the complaining witness, was employed by the defendants as stenographer and secretary. She was first in the employ of the defendants from May 10, 1927, until February 11, 1928, and re-entered their employ on March 5, 1928, and remained until May 19, 1928.

The witness testified that a check dated January 30, 1928, payable to M. J. Collins for the sum of $808 was given to her by Ralph S. Humphries; that the name of J. Jacobson is also written on this check; that she knew the handwriting of these two persons and that the names were written thereon by the two above-named defendants. The check was given to her between two-thirty and three o'clock on Saturday afternoon, February 11, 1928. The following Monday, February thirteenth, Lincoln's birthday, was observed as a holiday, so she could not present it at the bank for payment on that day. The first opportunity to present the check was on Tuesday, February 14, 1928, which was the first banking day thereafter. She was unable to obtain the money called for by the check. As a result of a conversation with one of the bank officers, she telephoned the defendant Humphries and told him that upon presenting the check Mr. Kohl, the manager, refused payment because there were not sufficient funds to pay the check. She says Humphries replied: " I know there is no money in the bank, Miss Collins; but there will be in three or four days." The defendant Humphries not only denied that statement but pointed to the bank account as a complete refutation.

The complainant further testified that on December 22, 1927, she loaned to defendants Humphries and Jacobson the sum of $700, and that the check represented that amount plus the salary due her.

The witness Kohl, assistant secretary of the Fidelity Trust Company of New York, testified that the General Extension Corporation had an account with that company in January and February. On the opening of business on the morning of February 14, 1928, the status of the account was $1,059.91, which repre-

sented uncollected funds. At the close of business on that day the account was overdrawn $1,400.31. The witness remembered the complaining witness coming in to see him with the check and that he refused to pay it. The testimony of this witness established that the balance in the trust company at the opening of business on February 14, 1928, included a deposit of $2,060 by check of the Etco Trading Corporation which was charged off again during the morning of that day for the reason that the payment thereof had been stopped by the Etco Trading Corporation. Notice to this effect, dated February fourteenth, was given to the defendants, and the account thereupon became overdrawn to the extent of $1,400.31. Two checks appear to have been paid by the trust company on that day, one for $155 and the other for $602, which checks were evidently paid before the complaining witness appeared at the bank that morning with her check, which left a balance of $1,059 representing uncollected funds.

The witness Kohl offered by the People completely disproved the People's contention. He testified in absolute contradiction of the other witnesses for the People with respect to the date when payment of the check for $2,060 was stopped. They fix such date as February 11, 1928. He says the check was dated the ninth, deposited on the tenth and payment not stopped until sometime during the morning of the 14th day of February, 1928; that at the opening of business on the 11th day of February, 1928, there was a balance of $3,382.76; that the twelfth was Sunday and the thirteenth a holiday, and that on the morning of the fourteenth the payment of the check for $2,060 had not been stopped, leaving a balance of $1,059.91 after all checks had been paid; that sometime during that morning payment on the check for $2,060 was stopped. This testimony was corroborated by records produced by the witness. The only evidence to contradict it was given by the witness Rogalsky, who was shown to be in error.

The appellants contend that there was no evidence to support the allegation that they committed a crime on January 30, 1928, as alleged in the information, or at any other time; that there was no evidence of intent to defraud as a matter of law, because the check in question had concededly been given for a past consideration; and that the defendant officers of a corporation which issued the check cannot be convicted of a violation of section 1292-a of the Penal Law.

The check was made out as early as January 30, 1928, but was not delivered to the complaining witness until February 11, 1928, at which time deposits had been made in the account of the defend-

ant corporation in the form of checks which amounted to a greater sum than the amount of the complainant's check.

The part of this transaction that was unfortunate for all parties was that payment was stopped on a check for $2,060. If payment had not been stopped, there would have been sufficient funds in the bank to insure the payment of the check and the check would have been paid.

The statute makes it a crime to issue a fraudulent check. One of the elements of this crime is intent. It is expressly provided that any person who, *with intent to defraud,* shall make or draw or utter or deliver any check, draft or order for the payment of money upon any bank or other depository, knowing at the time of such making, drawing, uttering or delivering that the maker or drawer has not sufficient funds in or credit with such bank or other depository for the payment of such check, *although no express representation is made in reference thereof,* shall be guilty of a misdemeanor. It is also provided that in any prosecution under this section *prima facie evidence of intent to defraud* and of knowledge of insufficient funds in or credit with such bank or other depository is established where such check, draft or order has been protested.

The mere fact that a check was given and it was found that when the check was presented there were insufficient funds, is not sufficient to warrant a conviction where it is shown that there was no intent to defraud.

The defendants in this case rely upon several defenses, one of which is that this check was given for a past due indebtedness. That is not a defense. If the check were issued by those defendants with intent to defraud, they might be convicted. The defendants established the fact that there was no intent to defraud. There would have been sufficient funds to pay this check but for the fact that payment was stopped upon another check which defendants had reason to believe would be honored. That check was not deposited with the expectation that payment would be stopped, and although the check to M. J. Collins was made out in January, it was not delivered for eleven days or until the defendants had reasonable grounds to believe there were sufficient funds to pay the same.

The *prima facie* case made out by the refusal of the bank to pay upon the ground of insufficient funds was met and overcome by positive evidence submitted by the defendants.

It is clear from the record that the check was given with the honest intent of paying the same when presented for payment. There was no intent to defraud and no crime committed. It is intimated in the argument of the district attorney that when the

check was given, the defendants had knowledge that the check would not be paid when presented. The evidence is to the contrary. It is also said that there were a number of transactions to which the defendants were parties which showed a dishonest intent. It would be difficult to reach any such conclusion from the evidence in this record.

We are of the opinion, therefore, that the People failed to prove the commission of a crime and that the judgments should be reversed and the information dismissed.

FINCH, MERRELL, O'MALLEY and PROSKAUER, JJ., concur.

Judgments reversed and information dismissed. Settle order on notice.