ALBERT MUSGRAVES v. STATE.

No. A-7393.   Opinion Filed Oct. 18, 1930.
(292 Pac. 376.)

Brett & Brett, for plaintiff in error.

J. Berry King, Atty. Gen., and Edward Crossland, Asst. Atty. Gen., for the State.

DAVENPORT, J. The plaintiff in error, hereinafter referred to as the defendant, was convicted of manslaughter in the first degree, and was sentenced to serve a term of six years in the state penitentiary and pay the costs. Motion for new trial was filed, considered, overruled, exceptions saved, and the case appealed to this court.

The testimony, in substance, is that on the night of the 15th of July, 1928, the defendant, his brother, Lawrence Musgraves, Jim Barker, and a girl they called Patsy Golden went to the home of the deceased and aroused the deceased, who served them beer; that Patsy Golden became intoxicated and threw some of the beer in Jim Barker's face; the defendant remonstrated with Patsy; Patsy and Lawrence Musgraves then went out of doors and a few minutes later Patsy Golden and Lawrence Musgraves returned to the house leaving the defendant outside on a cot; after Lawrence Musgraves came back into the house he talked about being tough and the deceased told him that he was not too tough to be slapped, and he slapped Lawrence Musgrave and knocked him down.

The testimony further shows that the parties started to leave the house and got out in the yard, and while in

the yard the deceased struck Lawrence Musgraves and knocked him down again. Jim Barker claimed that as he, Lawrence Musgraves, and Patsy Golden were leaving, he heard the deceased say, "Come here, Jim; he is cutting me all to pieces." Barker stated he returned and saw the defendant holding the deceased with one hand and cutting him with the other; that he hit the defendant over the head with a slop jar and knocked him to his knees and then hit him again. Another witness by the name of Giles stated that Barker hit the defendant in the face with the slop jar.

The testimony further shows that after the parties had been separated Jim Barker and Hoot Giles assisted the deceased into the house and found that he had several cuts on his body.

The testimony further shows, by the doctor, that the deceased died from the effects of his wounds, one of which was in the abdomen penetrating the cavity; a portion of the intestines was out on his clothes when the doctor arrived.

The defendant in his testimony states that after they had been at the home of the deceased for some time, where they had been drinking beer, he went out in the yard and lay down on a cot with his face down and went to sleep; that the first thing he knew some one was striking and cursing him, and telling him to leave; that whoever it was that was striking him hit him on his nose with some kind of a blunt instrument and broke his nose; that he then got out his knife and began cutting the party, not knowing who it was, and that when he left the place he did not know who it was he had cut, and did not find out until the next morning. So far as the record shows there is nothing to indicate there was any feeling between

the deceased and the parties, or that they had quarreled; that Lawrence Musgraves and the deceased were in the house when the deceased knocked Lawrence down, and then out in the yard struck him and knocked him down again.

The record does not show that the defendant knew anything about the trouble the deceased and his brother Lawrence had, and his only contention is that while asleep on the cot, with his face down, some one began striking him with some kind of a blunt instrument and broke his nose, and that when he got up he got his knife out and began cutting the party.

Hoot Giles' testimony tends to show that Jim Barker struck the defendant in the face with a slop jar and knocked him to his knees, and then struck him again.

The foregoing is a brief abstract of the testimony.

The defendant has assigned several errors alleged to have been committed by the court in the trial of his case. The defendant discusses the first, second, and third assignments together. They are as follows:

"1. Because the verdict of the jury returned in said court is contrary to the said evidence and is not supported by the evidence.

"2. Because said evidence is contrary to the law.

"3. Because said evidence is contrary to both the law and the evidence and is not sustained by the law or the evidence."

The defendant urges in his argument that the verdict of the jury of manslaughter in the first degree is not supported by the evidence and is contrary to the evidence. Section 1740, C. O. S. 1921, states that homicide is manslaughter in the first degree in the following cases:

"First. When perpetrated without a design to effect death by a person while engaged in the commission of a misdemeanor.

"Second. When perpetrated without a design to effect death, and in a heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon; unless it is committed under such circumstances as constitute excusable or justifiable homicide.

"Third. When perpetrated unnecessarily either while resisting an attempt by the person killed to commit a crime, or after such attempt shall have failed."

The defendant in arguing these assignments urges that the evidence shows that the homicide was committed under circumstances which constitute excusable or justifiable homicide, and that the evidence does not show that the homicide comes within the third subdivision of manslaughter in the first degree, but that the evidence clearly shows that it was a case of self-defense or excusable or justifiable homicide. It is clearly shown from the evidence of the parties present that, while in the house Lawrence Musgraves was knocked down by the deceased, and after they went out of the house Ernest Ford knocked Lawrence Musgraves down again. Up to the time Ernest Ford knocked Lawrence Musgraves down the last time it appears that the defendant was out on a cot in the yard; then it was, the defendant claims, that some one began striking him with a blunt or rough instrument and broke his nose and he got out his knife and began cutting the party.

There is no testimony to show what brought about the fight between the deceased and the defendant, as the last thing any of the witnesses seem to remember took place in the yard, before the deceased called and stated the defendant was cutting him to pieces, was when the deceased knocked the brother of the defendant, Lawrence Musgraves, down.

All of this testimony was before the jury, and the jury had an opportunity to judge of the weight of the evidence and credibility of the witnesses and their demeanor upon the stand, and this court will not substitute its judgment for the judgment of the jury, where there is any competent testimony upon which the jury might reasonably conclude that the defendant was guilty. The question of settling the conflict of the evidence is solely within the province of the jury and not for this court to determine, if there is any competent evidence in the record to sustain the verdict.

It is further contended by the defendant that instruction No. 3, given by the court, did not correctly state the law and deprived the defendant of a fair and impartial trial. In instruction No. 3, the court defined homicide as follows:

"Homicide is the killing of one human being by another. Homicide is either murder, manslaughter in the first degree, manslaughter in the second degree, excusable homicide, or justifiable homicide. There is no evidence in this case showing, or tending to show, manslaughter in the second degree, and that degree of homicide will not be defined to you, further than to say that it is certain kinds of negligent, but unintentional killings. There is no evidence in this case showing, or tending to show, that the homicide in this case was excusable, and that degree of homicide will not be defined to you, further than to say it is certain kinds of accidental killings."

The defendant urges that in giving instruction No. 3, in which the court stated to the jury that there was no evidence showing, or tending to show, that the homicide in this case was excusable, amounted to a comment on the weight of the evidence.

Section 1752, C. O. S. 1921, defines what is excusable homicide. Section 1754, C. O. S. 1921, defines what is

justifiable homicide. That part of instruction No. 3, complained of by the defendant, is shown to relate to what is excusable homicide, and in defining homicide the court told the jury that there was no testimony showing that the offense charged against the defendant was excusable homicide. Nowhere in this instruction does the court invade the province of the jury or attempt to tell the jury what there was in the testimony to show that the killing of the deceased by the defendant was not justifiable. In his general instructions, however, the court does define and tell the jury under what circumstances the defendant would be justifiable in striking the fatal blows, and required the jury to find beyond a reasonable doubt that the evidence was sufficient to sustain a conviction before it returned its verdict. We do not think the giving of instruction No. 3 in any way whatever prejudiced the rights of the defendant before the jury.

The defendant next complains that the court committed prejudicial error under the evidence in this case in instructing repeatedly on the question of murder, and insists that there is no evidence which tended to show that the homicide was murder. Citing, in support of his contention, Mulkey v. State, 5 Okla. Cr. 75, 113 Pac. 532.

As the defendant in this case was only convicted of manslaughter in the first degree, the instruction upon murder would not be reversible error.

In Duncan v. State, 11 Okla. Cr. 217, 144 Pac. 629, 630, this court, in the fifth paragraph of the syllabus, said:

"An assignment of error, based upon an instruction of the court bearing upon the question of the guilt or innocence of the person on trial of murder is of no avail when the jury returned a verdict finding such person guilty of manslaughter and not of murder." Tinney v. State, 19 Okla. Cr. 127, 201 Pac. 819.

The instruction on murder was not error, and, in view of the fact that the defendant was convicted of manslaughter in the first degree, could not be urged as grounds for reversal of this case.

In defendant's twelfth assignment of error he insists that the juror O. E. Shumate was disqualified. An examination of the case-made shows that only the examination of the juror by the defendant is brought up in the case-made. There is nothing in the record to show that the defendant had exhausted his peremptory challenges at the time he challenged this juror. In Nail v. State, 18 Okla. Cr. 40, 192 Pac. 592, 593, this court said:

"It is next contended that the trial court erred in overruling a challenge for cause to the competency of the jurors Strawn and Guest. The record affirmatively shows that neither of these jurors served upon the panel. It is not made to appear whether they were challenged peremptorily by the state or by defendant. If challenged by the state, it is apparent that defendant could not have been injured by any previous ruling of the court overruling a challenge for cause by defendant. If they were afterwards challenged peremptorily by defendant before any error reversible in its nature could be based upon the alleged erroneous action of the trial court in overruling a challenge for cause, it must appear that defendant was required to and did exhaust all of his peremptory challenges, and that by reason of such action, defendant was deprived of a fair and impartial jury in the trial of the cause. There is no showing in this record that any of the jurors who sat upon the trial of this cause were in any respect disqualified or in any manner prejudiced against defendant or his cause of defense."

There are other errors assigned which have not been overlooked, but have been given careful attention. After a careful consideration of them we do not think they possess sufficient merit to warrant a reversal of the case.

The evidence in this case is sufficient to sustain the verdict of the jury. The court sustantially instructed the jury as to the law as applied to the facts in this case. No fundamental or prejudicial errors appear in the record sufficient to warrant a reversal.

The judgment is affirmed.

EDWARDS, P. J., and CHAPPELL, J., concur.