## DEWEY BUTLER v. STATE.

No. A-9108.   Nov. 20, 1936.
(62 Pac. [2d] 662.)

H. H. Cook and I. L. Cook, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for the State.

DOYLE, J. This appeal is from a judgment rendered upon the verdict of a jury finding the defendant, Dewey Butler, guilty of the crime of larceny of livestock and fixing his punishment at five years' imprisonment in the penitentiary.

The information in substance charges that in Atoka county, on or about the 1st day of November, 1932, Dewey Butler, Lonnie Butler, and Ed Whisenhunt, acting conjointly and together committed the crime of larceny of livestock, and did take, steal, and carry away from the possession of one E. C. Newman, without his consent, one dark brown mare mule five years old and one dark brown horse mule four years old, said mules being then and there the property of said E. C. Newman.

A severance was granted and the defendant, Dewey Butler, was tried on the 23d day of October, 1935.

The grounds of the motion for a new trial, and here assigned as error, are that the verdict of the jury was not supported by sufficient evidence and is contrary to law; that there was a fatal variance between the allegations

of the information that the stolen mules were the property of E. C. Newman, while the proof showed that Tom Franks was the owner.

The evidence on the part of the state showed that the prosecuting witness, E. C. Newman, lived with his father-in-law, Tom Franks, on a farm in the Butler community in Atoka county, about 15 miles east of the city of Atoka. That on or about November 1, 1932, the two mules described in the information were taken from the Newman place to the home of Ed Whisenhunt, about 10 miles south of Boswell, from there they were taken across Red River, and sold to Joe Goss.

Ed Whisenhunt testified that the mules were brought to his place by Dewey Butler and Lonnie Butler; that he and Dewey Butler took them on across the river and sold them to Joe Goss for $50; that Dewey Butler paid him $5 for assisting him in selling the mules; that upon his separate trial, nearly two years before, he was convicted and sentenced to serve a term of five years and was serving the term; that Will Whisenhunt and his wife were there and they all had breakfast before he and Dewey Butler took the mules across the river.

Joe Goss testified that he lived in Fannin county, Tex., three miles south of Red river; that on the 5th day of November, 1932, at his house and store he bought a pair of mules from Ed Whisenhunt for $50; that there was a young man about 23 years of age with him, and he asked the young man if the title was all right, and he said he thought it was; that he paid $30 in cash and gave a check for $20, payable to Ed Whisenhunt. He further testified that about two months later he delivered the mules to a young man by the name of Newman, who came to his place and identified the mules as his property.

Will Whisenhunt testified that he lived at Boggy Bridge, during the first part of November, 1932; he moved with his wife to Ed Whisenhunt's place 10 miles south of Boswell; that Clarence Butler moved them, and that Dewey Butler and Lonnie Butler, also brothers, went with them. That after the defendants were arrested, the defendant, Dewey Butler, tried to get witness to move out of the country, and they moved him and his wife to Lindsay, Okla.; thereafter he was located by the sheriff and returned to testify as a witness.

Laura Whisenhunt testified that she was the wife of Will Whisenhunt; that they formerly lived on Smith Butler's place near Boggy Bridge; that in November, 1932, she with her husband went to Ed Whisenhunt's place in Lonnie Butler's car, to pick pecans. A few days after they were there Clarence, Lonnie, and Dewey Butler came there one morning before they were up and they all had breakfast there that morning. Ed Whisenhunt told his wife that he and Dewey Butler were going across the river; Dewey was present when he told her this.

J. E. Price testified that he lived in the Butler community; that shortly after Dewey Butler got out of jail he came to see him and told him that he would give him $50 to go down in Texas to pay the man back his money for the mules and fix it so he would not identify the defendant. The next day he told the defendant, Dewey Butler, that he did not want to have anything to do with it.

E. C. Newman and Tom Franks testified as to the loss and recovery of the mules, and as to the ownership of the mules. The testimony of both witnesses was in substance to the effect that E. C. Newman and his wife lived with his father-in-law, Tom Franks; that Franks

was the owner of the mules in question and Newman farmed the place with the mules for a share of the crop and fed and cared for the mules; that at the time of the theft, Newman had left his wife at the place and had gone out west to pick cotton. Franks testified that Newman worked the place for a share of the crop; that he, Franks, owned the mules, but he was not at the place when the mules were taken.

When the state rested, the defendant interposed a demurrer to the evidence on the ground that there is a fatal variance between the allegations of the information as to the ownership of the alleged stolen property, and the proof offered by the state herein.

On the part of the defense, W. E. and Mary Wood each testified that Dewey Butler was at their place to get some medicine for his wife about 8 or 9 o'clock of the night the mules were taken.

Mrs. Prescille Gavitt testified that some time after dark on the night the mules were reported to have been taken, Dewey Butler called at her place in the Butler community.

Mrs. Dewey Butler testified that she was sick on the night of the alleged larceny, and that her husband spent the night at home.

Mary Butler testified that Dewey Butler's wife was sick and she spent the night at their home; that Dewey Butler went to bed that night about 10 o'clock and next morning got up about 4 or 5 o'clock.

The defendant as a witness in his own behalf testified that he was at home the night of the larceny, had nothing to do with it, and knows nothing about it.

It appears from the foregoing that the undisputed facts and circumstances prove all the elements necessary to sustain the offense charged. The only contention urged is that the evidence was insufficient to connect this defendant with such felonious taking.

While the jury is the exclusive judge of the weight of the evidence and the credibility of the witnesses, and where there is credible evidence in the record, which, if believed, is sufficient to authorize the jury to conclude that the defendant is guilty of the offense charged, this court will not disturb the judgment.

We think the evidence was amply sufficient to connect this defendant with the commission of the offense.

The second assignment of error relates to the fact that the information alleges that the mules in question were the property of E. C. Newman, while the proof discloses that the title to the mules was in his father-in-law, Tom Franks.

Section 2888, St. 1931, provides:

"When an offense involves the commission of, or an attempt to commit a private injury, and is described with sufficient certainty in other respects to identify the act, an erroneous allegation as to the person injured, or intended to be injured, is not material."

Under this rule of criminal pleading the name of the owner is not material if the proof discloses all the essential facts necessary to constitute the offense charged, including the possession of the property by the alleged owner.

The possession of the property by the alleged owner, E. C. Newman, was sufficient to make it the subject of larceny. The title may be held either in the owner or the

possession of the person from whom it is taken. This cannot be held to constitute a variance.

In Dickson v. State, 28 Okla. Cr. 378, 231 Pac. 315, this court held:

"In a prosecution for larceny, the name of the owner of the property stolen is only required to identify the transaction, so that the defendant, by proper pleading, may protect himself against another prosecution for the same offense."

In the case of Little v. State, 21 Okla. Cr. 1, 204 Pac. 305, it was held that:

"The actual condition of the legal title of property alleged to have been stolen is immaterial to the thief; so far as he is concerned, one may be taken as the owner who is in personal possession of the property and whose possession was unlawfully disturbed by the taking. The possessor of the goods from whom the thief took them may properly be described as the owner of the property in the indictment or information." And see Carson v. State, 30 Okla. Cr. 438, 236 Pac. 627; Leyerle v. State, 31 Okla. Cr. 179, 237 Pac. 871; Sanders v. State, 35 Okla. Cr. 139, 249 Pac. 356.

There was no exception taken to the instructions given and no criticism made upon them in this court. They correctly and fully present the law of the case, and the defendant, from all the record discloses, had a fair and impartial trial.

It follows that the judgment should be, and is, affirmed.

EDWARDS, P. J., and DAVENPORT, J., concur.