MOSS AND CLARK *v.* STATE.

Crim. 4051

Opinion delivered September 27, 1937.

*George F. Edwardes, Jr.,* for appellants.

*Jack Holt,* Attorney General, and *John P. Streepey,* Assistant, for appellee.

BAKER, J. Although one of the principal contentions in this case urged by the appellants is that the evidence is not sufficient to sustain the conviction, we think it unnecessary to set forth with minute detail the evidence relied upon by the state. The defendants were charged with obtaining money under false pretenses and we have carefully examined all the testimony and have come to the conclusion that there was sufficient substantial evidence to warrant the submission of the case to a jury.

We agree that the evidence is not altogether satisfactory and that upon some points it is somewhat meager; but there are certain facts and circumstances testified about which, if believed, warrant a conclusion that the

conduct of the defendants was reprehensible in the highest degree. From the evidence, however, the following conclusions might well have been reached by the jury in the determination of the facts.

Gates Carlisle, Jr., went by bus from Finley, Oklahoma, to Texarkana. Shortly after he had reached the bus station, and while still standing near it, he was approached by Ray Moss, whom he had never seen before and who asked him how long he was going to stay over and if he were acquainted with the town. Moss also stated that he was having to wait for a bus and the two went for a walk. They were shortly thereafter approached by John Clark, who sought information from them about zoos, parks and places of entertainment, and who advised them he had been down in Louisiana selling some land for his sister and that he had gotten $1,200 more than she had expected and that he was going to pocket that. Clark proposed to Moss that they match money and upon Carlisle advising that he did not know the game Moss and Clark matched coins and a claim was made that Moss had won $100 from Clark. Carlisle was induced to match coins also. Clark made, at least, a pretense of counting out and paying over $100 to Moss. Carlisle said he observed that this money was counted out and delivered. It was then insisted that Carlisle also owed $100 to Moss and that he must pay over. Upon this insistence and under the belief that Moss had won his money, he delivered over $19, all he had except a few coins, less than a dollar in amount.

About this time a police officer approached, took the three into custody and started to the police station with them. Moss furtively handed back to Carlisle the amount that Carlisle had presumptively lost in the matching game with the remark, "You don't know anything about this." At the police station all of the parties were searched. Moss had only about $11, Carlisle had the $19, plus the fractional part of a dollar in coins, and Clark had less than a dollar. Moss claimed to have "hitch-hiked" from El Dorado to Texarkana. He and

Clark were claiming to be strangers to each other as they were to Carlisle.

Moss' wife telephoned the police station and made inquiry about him and it was discovered that they had gone to Texarkana in a car. Clark claimed to have gone to Texarkana with a traveling man from Pine Bluff, although he claimed his home was in Canada, at or near Montreal. Neither Clark nor Moss testified at the time of the trial and made no explanation of these inconsistencies in their statements made to the police officers, and as shown in the trial. The jury might well have concluded that Moss and Clark were operating in concert to obtain what money or valuables Carlisle possessed, and they succeeded in getting nearly all of his money, although it was returned after their arrest.

In the statement above, to the effect that neither Clark nor Moss testified in the case, we are not suggesting that that fact is any evidence or that it was so regarded by the jury. It is patent, however, that the defendants knew their conduct was under investigation and scrutiny and that the jury would interpret all the testimony offered during the trial and make reasonable inferences therefrom; that the contradictions and conduct were not consistent with uprightness and honesty.

There were other pertinent facts and statements unnecessary to set forth in detail, but the foregoing, we think, is sufficient to show that there was substantial evidence to sustain the verdict of the jury and such evidence and reasonable inferences therefrom warranted the conviction, particularly when such proof must be regarded and be reviewed by us in the light most favorable to the appellee. *Slinkard* v. *State,* 193 Ark. 765, 103 S. W. (2d) 50; *Smith* v. *State, ante,* p. 264, 106 S. W. (2d) 1019; *Combs* v. *State,* 107 S. W. (2d) 525.

Numerous authorities cited support the foregoing cases.

The appellants object because of the fact that the court submitted to the jury the question of whether there was a conspiracy between the appellants or whether they were acting in concert in pursuance of the plan whereby

they had cheated, defrauded, or obtained wrongfully from the prosecuting witness, Carlisle, the $19 in money by making misrepresentations to him upon which he relied and which they knew to be false. The lack of testimony upon this matter is urged very strongly.

Of course, it is difficult in most instances to prove such conspiracies, the details and purposes of which are shrouded in secrecy. The courts have uniformly held that conspiracies, like many other facts, may be established by circumstances from which the conspiracy may be inferred. We know of no real exception to the rule.

"The testimony warranted the submission of the question of conspiracy, which need not be proved by positive testimony, but may be established by circumstances. *Chapline* v. *State,* 77 Ark. 444, 95 S. W. 477; *Butt* v. *State,* 81 Ark. 173, 98 S. W. 723, 118 Am. St. Rep. 42." *Sims* v. *State,* 131 Ark. 185, 198 S. W. 883; *Venable* v. *State,* 156 Ark. 564, 246 S. W. 860.

It is also suggested that the prosecuting witness Carlisle suffered no real loss, that his money was voluntarily returned. The testimony shows that he delivered his money to Moss, who put it in his pocket, and Carlisle testified further that it was not until after their arrest and they were approaching the police station that the money was secretly returned to him.

We have said: "One who obtains money by false pretenses is liable to punishment, although it may turn out that the prosecutor suffered no financial loss thereby." *Higgins* v. *State,* 141 Ark. 633, 217 S. W. 809.

Appellant Moss argues that his wife was called as a witness and required to testify in the case and that this was error as she could not be required to testify against her husband, Ray Moss. He argues also that he had insisted upon a severance and that the court had denied his motion and had required him and Clark to proceed to trial together and that since this ruling had been made it was then error to offer Mrs. Moss as a witness, although it was explained she was offered to testify solely against Clark.

According to our examination of this record, as it is presented here, a severance was not asked until after the jury was made and the opening statement had been made, or while the prosecuting attorney was making it. Of course, the request for a severance at that time came too late; but Mrs. Moss testified to no substantial fact whereby either of the appellants could have been prejudiced, unless it was her statement that she was the wife of Moss. It was necessary that that fact be determined by some evidence before it became apparent that her testimony might be improper. She expressed an unwillingness to testify and was promptly excused. There has been no suggestion whereby prejudice might have arisen or could in any manner be presumed by the testimony in regard to the one fact that the witness was the wife of one of the appellants.

A careful examination of this entire record discloses no error prejudicial to the rights of the appellants.

Affirmed.