## JOHN ARMSTRONG v. STATE.

No. A-9912.   Feb. 18, 1942.

(122 P. 2d 823.)

John F. Thomas, of Lawton, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and J. Walker Field, Asst. Atty. Gen., for defendant in error.

JONES, J.   The defendant, John Armstrong, was charged in the district court of Comanche county by two informations filed on September 13, 1939, and by one information filed on October 9, 1939, with fraudulently obtaining property by means of a bogus check.   The cases were consolidated for the purpose of taking evidence, and have been consolidated in this court for the purpose of appeal.   Defendant was tried to the court without a jury and convicted in all three cases.   He was sentenced to

three years imprisonment in the State Penitentiary in each case, the sentences to run concurrently, and appeals to this court.

Counsel for defendant contends that the evidence is insufficient to support the convictions.

Section 2086, O. S. 1931, 21 Okla. St. Ann. § 1541, states that every person who, with intent to cheat and defraud, shall obtain from any person, by means or use of any false or bogus check, anything of more than $20 in value shall be guilty of a felony.

"The term 'false or bogus check' shall include checks or orders given for money or property which are not honored on account of insufficient funds of the maker to pay same, as against the maker or drawer thereof, the making, drawing, uttering or delivering of a check, draft or order, payment of which is refused by the drawee, shall be prima facie evidence of intent to defraud and the knowledge of insufficient funds in, or credit with, such bank or other depository; provided, such maker or drawer shall not have paid the drawee thereof the amount due thereon, together with the protest fees, within five days from the date the same is presented for payment; and, provided, further, that said check or order is presented for payment within 30 days after same is delivered and accepted."

Ed Morrow testified for the state that on Sunday, July 23, 1939, defendant came to his place and bought two bull calves. Defendant gave him a check for $60, dated July 22, 1939, drawn on defendant's account. Nothing was said about the date that check was to be presented for payment or there being insufficient funds to pay it. On July 25th, Morrow presented the check at the bank on which it was drawn and payment was refused. Defendant stated if the prosecution were dropped, he would try to pay the check.

R. E. Faries stated that on Sunday, July 23, 1939, he sold defendant six calves and a heifer. Defendant gave him a check drawn on his account in the sum of $102.50, dated July 22, 1939. Nothing was said about insufficient funds or time for presentation of the check. On July 25th, payment of the check was refused. Defendant told witness that he could get the money for the check if he could get the check. Defendant never offered him the money.

T. J. Clark, Jr., testified that defendant bought a cow from him on July 23, 1939, and gave him a check for $35 drawn on defendant's account, dated July 22, 1939. Payment was refused on the check on July 25th and 26th. Witness had no reason to believe that the check would not be paid upon presentation. Defendant told him that he would try to pay the check after the bank had refused payment.

Harold Huffer, teller at the Security Bank & Trust Company of Lawton, stated that defendant had $15.50 on deposit at that bank on July 22, 1939, and had made no deposits since that time. The three checks given by defendant were drawn on the bank for which he worked, that the signatures were defendant's, and that there were insufficient funds to pay any of the checks.

Joe Tice testified for defendant that on July 24, 1939, defendant sold some cattle in Duncan, and was paid $20 in cash and the balance in a check.

Jim Glover, on behalf of defendant, said that he offered to let the defendant have the money he needed to pay off the $102.50 check given to Faries, if defendant would get the check.

Defendant, testifying in his own behalf, stated that in buying cattle which were to be resold immediately, it was the custom to give checks on a bank and then de-

posit the money to take care of the checks when the cattle were sold. He admitted giving the checks, knowing that he did not have sufficient funds in the bank to cover any of them. He states that he advised Marlow and Faries of this fact, but only inquired of T. J. Clark when he would present the check for payment. He didn't remember of having seen T. J. Clark, Jr. Defendant could have borrowed the money from Jim Glover to take up the Faries check, but was unable to make arrangements with Faries.

Defendant's testimony further states that the cattle were sold on July 24th. Defendant was paid after dark. He received $20 in cash and a check for either $186 or $196 to be deposited to take care of the outstanding checks. He was feeling bad when he went home. He took a drink and got drunk. Four or five or six days later he woke up in Burkburnett, Tex., with four or five or six dollars in his pocket. He does not know what happened to the check.

Defendant admitted prior convictions for manslaughter, driving while drunk, and possession of whisky.

In the case of Huckaby v. State, 22 Okla. Cr. 376, 211 P. 525, it was held that under the bogus check statute, before the 1923 amendment, where checks were given in payment of the purchase price of cattle and the vendors were expressly informed that there was then no money in the bank to honor such checks, but parted with the cattle on the strength of the purchaser's promise to take care of such checks in the future, a failure to keep these promises did not constitute false pretense.

In 95 A. L. R. 494, it is stated:

"* * * under statutes of the type under consideration, disclosure by the drawer to the payee that he has not at the time sufficient funds in the bank to meet the check, purges the transaction of its criminal character,

because under such circumstances the element of fraudulent intent is lacking and the transaction in its essential nature is an extension of credit to the drawer."

In Gunther v. State, 42 Okla. Cr. 129, 276 P. 237, 238, this court said:

"It is apparent from the act that it was the intent of the Legislature to make it a criminal offense for any person to obtain money or anything of value by giving a check on a bank in which he had no funds at the time to meet the same, or which funds at the time were insufficient to pay the check. The indorsement of the check by the drawee, 'insufficient funds,' would be prima facie evidence of the intent to defraud, provided that the drawer did not pay the drawee the amount of the check with protest fees within five days from the date of the presentment thereof for payment."

The state made a prima facie case by showing that defendant obtained cattle for the checks; that the checks were presented and payment refused within 30 days from the date of delivery of the check; that the defendant did not have sufficient funds in the bank to pay any of the checks; and that the checks were not paid by the defendant within five days after the drawee refused payment.

Defendant offered evidence of having no intent to defraud by showing the custom of cattle buyers, by stating to Marlow and Faries that he did not have sufficient funds in the bank, and by having the proceeds from the sale of the cattle put into check form so that the outstanding checks would be honored.

The intent of defendant thus became a question of fact for the court, who was sitting in this case without a jury, to decide.

In Beach v. State, 28 Okla. Cr. 348, 230 P. 758, this court held:

"Fraudulent intent is the gist of the offense of obtaining money by means of a bogus check.

"(a) Where there is competent evidence supporting a finding of such intent, the verdict of the jury will not be disturbed, because there is some testimony tending to indicate there was no such fraudulent intent."

We find no prejudice or abuse of discretion in the action of the trial court.

The case is affirmed.

BAREFOOT, P. J., and DOYLE, J., concur.