# TOM STEVENS v. STATE.

No. A-9953.   April 1, 1942.
(124 P. 2d 426.)

Fred L. Hoyt and Frederick J. Hoyt, both of Oklahoma City, for defendant.

Mac Q. Williamson, Atty. Gen., J. Walker Field, Asst. Atty. Gen., and Lewis R. Morris, Co. Atty., of Oklahoma City, for the State.

BAREFOOT, P. J. Defendant, Tom Stevens, was charged in the district court of Oklahoma county with the crime of "obtaining merchandise by means and use of a false and bogus check", was tried, convicted and sentenced to serve a term of two years in the penitentiary, and has appealed:

The statute under which defendant was charged is Oklahoma Statutes 1931, section 2086, Okla. St. Ann. and Okla. Stats. 1941, Title 21, § 1541, and is as follows:

"Every person who, with intent to cheat and defraud, shall obtain or attempt to obtain from any person, firm or corporation, any money, property, or valuable thing, of the value of Twenty ($20.00) Dollars, or less, by means or by use of any trick or deception, or false or fraudulent representation, or statement or pretense, or by any other means or instrument or device commonly called the 'confidence game,' or by means or use of any false or bogus checks, or by any other written or printed or engraved instrument or spurious coin, shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine not to exceed One Hundred ($100.00) Dollars, or by imprisonment in the county jail for not more than thirty (30) days, or by both such fine and imprisonment. If the value of the money, property or valuable thing referred to in the preceding paragraph, be more than Twenty ($20.00) Dollars, any person convicted hereunder shall be deemed guilty of a felony and shall be punished by imprisonment in the State Penitentiary, for a term not exceeding seven (7) years, or by a fine not to exceed Five Hundred ($500.00) Dollars, or by both such fine and imprisonment. The term 'false or bogus check' shall include checks or orders given for money or property which are not honored on account of insufficient funds of the maker to pay the same, as against the maker or drawer thereof, the making, drawing, uttering or deliver-

ing of a check, draft or order, payment of which is refused by the drawee, shall be prima facie evidence of intent to defraud and the knowledge of insufficient funds in, or credit with, such bank or other depository; provided, such maker or drawer shall not have paid the drawee thereof the amount due thereon, together with the protest fees, within five days from the date the same is presented for payment; and, provided, further, that said check or order is presented for payment within thirty days after same is delivered and accepted.

"The word 'credit' as used herein, shall be construed to mean an arrangement or understanding with the bank or depository, for the payment of such check, draft or order."

A jury was waived by defendant and he was tried before the court.

For reversal it is contended:

"1. That the court erred in overruling the motion for new trial.

"2. That the court erred in refusing to sustain the defendant's demurrer to the evidence and refusing to discharge the defendant upon his motion at the close of the state's evidence upon the grounds that the facts testified to by the state's witnesses did not constitute sufficient facts to show that the crime charged had been committed.

"3. That the decision of the court is not sustained by sufficient evidence and is contrary to law."

All of these propositions may be considered together.

This charge was the outgrowth of the purchase by Tom Stevens of the complaining witness, John Marshall, of 89 crates of strawberries on the 15th day of May, 1939, and for which was given a check in the sum of $313.60, drawn upon the First National Bank of Ponca City and which was turned down for insufficient funds and was not paid.

The contention of defendant was, and he so testified, that he had an agreement and understanding with the complaining witness to the effect that he would not have sufficient funds to pay the check without first selling and collecting for the strawberries and depositing the money in the bank. The evidence on the part of the defendant revealed that prior to this transaction defendant had made other purchases of strawberries from the complaining witness and had given checks therefor and that said checks had been paid. Defendant also offered evidence to show that on May 16, 1939, he deposited in the Ponca City bank the sum of $222.45, on May 17, $140, on May 20, $264.60, on May 27, $35. That the following checks were paid out of said funds: On May 15, $156; May 16, $78; May 20, $134; May 22, $120; May 24, $192. The evidence also showed that there were a number of outstanding checks at the time these deposits were made. The check for $313.60 for which he was charged was presented to the bank on May 19, 1939, and was not paid on account of insufficient funds.

A witness, Ray Adams, who worked for defendant, testified that he was present when the defendant purchased the strawberries and that Mr. Marshall was to hold the check until the defendant sold the berries. Other evidence was offered with reference to an attempt to settle the matter by payment of the check, but the same was never paid.

For the state three witnesses testified. John Marshall, the complaining witness, testified that he lived near Tahlequah and was engaged in truck farming and raising strawberries, and he testified to selling defendant strawberries on at least several different occasions in the early part of 1939 and of seeing defendant on the night of May 14, 1939, and of making arrangements to

sell him 100 crates of strawberries on the following morning. He did so, and the defendant gave him a check for $313.60 on the First National Bank of Ponca City. That he deposited the same for payment and it was returned unpaid and marked insufficient funds. He stated that he had no agreement with defendant that he was to have the right to sell the berries before he was to be paid. That he accepted the check in good faith and expected it to be paid on presentation. That said check was never paid.

The witness Lon Humphrey testified that he lived near the complaining witness and assisted him in selling his berries. That he had accompanied Mr. Marshall to Oklahoma City upon many different occasions and was present at the time defendant gave this check and other checks to Mr. Marshall. The witness Overstreet testified that he was a banker at Ponca City, and he gave the account of defendant in the bank and testified to the paying of certain checks, and that he turned down the check on account of insufficient funds to meet the same, and that there were other outstanding checks that were unpaid.

From the above statement it will be seen that the evidence was conflicting, and the question of "intent" was a question of fact for the court to decide, this case having been submitted to the court without the intervention of a jury. We have recently had occasion to discuss this statute in the case of Armstrong v. State, 74 Okla. Cr. 42, 122 P. 2d 823. The issues there presented are very similar to the facts here. It is there stated:

"1. Section 2086, O. S. 1931, 21 Okla. St. Ann. § 1541, makes it a criminal offense for any person, with intent to defraud, to obtain money or anything of value by giving a check on a bank in which he has no funds at the time to meet the same, or which funds are insuf-

ficient to pay the check. The indorsement of the check by the drawee, 'insufficient funds,' is prima facie evidence of the intent to defraud, provided that the drawer did not pay the drawee the amount of the check with protest fees within five days from the date of the presentment thereof for payment, and such presentment is made within 30 days from the date of delivery of the check.

"2. Fraudulent intent is the gist of the offense of obtaining property by means of a bogus check.

"3. Where the state has made a prima facie case against defendant, and the defendant offers testimony that he advised some of the prosecuting witnesses that he had insufficient funds to pay the checks (which is conflicting with testimony of the state), that there was a custom among cattle buyers to write checks and afterward deposit money to honor them, and that he had received a check to cover the insufficiency of his funds which he intended to deposit, but became intoxicated and failed to make the deposit, a question of fact as to defendant's intent is presented for determination by a jury.

"4. Where there is competent evidence supporting a finding of intent to defraud, the verdict will not be disturbed because there is some testimony tending to indicate there was no such fraudulent intent."

Other cases in which this statute had been construed are: Gunther v. State, 42 Okla. Cr. 129, 276 P. 237; Loughridge v. State, 63 Okla. Cr. 33, 72 P. 2d 513; Taylor v. State, 21 Okla. Cr. 351, 207 P. 746; Carr v. State, 21 Okla. Cr. 377, 208 P. 275; Tillery v. State, 23 Okla. Cr. 226, 214 P. 198; Pickett v. State, 35 Okla. Cr. 60, 248 P. 352; Douglas v. State, 15 Okla. Cr. 648, 179 P. 947.

Defendant cites the cases of Taylor v. Territory, 2 Okla. Cr. 1, 99 P. 628, and Helsey v. State, 18 Okla. Cr. 98, 193 P. 50, 17 A. L. R. 197. An examination of these cases reveals that in neither of them was the prosecution under the bogus check statute here involved. All the

principles enunciated in those cases are found to exist in the case at bar.

For the reasons above stated, the judgment and sentence of the district court of Oklahoma county is affirmed.

JONES and DOYLE, JJ., concur.