# MOORE v. STATE.

No. A-11656.   Oct. 29, 1952.

(250 P. 2d 46.)

Paul & McPheron, Durant, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and James P. Garrett, Asst. Atty. Gen., for defendant in error.

POWELL, J. W. S. Moore, plaintiff in error, referred to hereinafter as defendant, was charged in the district court of McCurtain county, with the crime of obtaining property under false pretenses by use of a false and fraudulent check; was tried before a jury, found guilty and his punishment fixed at one year in the State Penitentiary, and a fine of $300. The case is here on appeal.

For reversal seven specifications of error are set out, and argued in order, as follows:

"(1) Error of the court in overruling challenge to jurors Ernest McCombs and J. D. Wilkinson.

"(2) Variance between the information and proof.

"(3) No showing that the check in question was presented to The First National Bank in Durant, Oklahoma, the bank on which it was drawn for payment.

"(4) Money was on deposit in The First National Bank in Durant, Oklahoma, when check was given to the prosecuting witness.

"(5) The said defendant, W. S. Moore, offered to pay said check but said offer was refused.

"(6) Error of the court in refusing to give requested instructions.

"(7) Error of the court in overruling defendant's motion for new trial."

The specifications raised questions not wholly factual, but no authorities are cited in support thereof in the extensive brief filed. Byron, it is true, once cynically described appellate decisions as:

"Smooth solid monuments of mental pain—The petrifactions of the plodding brain."

Still, if it may be had, we much appreciate light along the way.

Considering the first proposition, that the court erred in overruling defendant's challenge to jurors Ernest McCombs and J. D. Wilkinson, the record discloses that at no time either at commencement of examination, or at the close, was any reason suggested as to why either of the respective jurors questioned were disqualified, other than "Challenged for cause."

Juror Ernest McCombs testified that he lived at Idabel, was in the furniture business, had been summoned as a juror for the term; and that he had known the prosecuting witness in the within case for about 15 years. The juror stated that prior to opening the furniture store, he had worked in the sheriff's office for a while, and had been county superintendent of schools for four years, and met up with Mr. Sells quite often. That in the fall of 1950, prior to the then term of court in June, Mr. Sells had told him he was in Idabel for a trial, but the case was not coming up, and told him it involved "a bad check deal", that he had a bad check case against W. S. Moore. The juror stated that the purported facts in the case were not given, and this juror came to no conclusion in the matter, and he disclaimed any bias or prejudice in the case. The court overruled defendant's challenge for cause.

Juror J .D. Wilkinson testified that he lived in Idabel, worked at the First State Bank, and that Sol Sells, the prosecuting witness, did business with that bank and had for ten or twelve years. In answer to the question "Do you remember his discussing anything with you about this particular case?" the witness answered, "No, sir. I saw Mr. Sells this morning, shook hands with him, and he mentioned he was in court today. I told him I was also. He did not mention why." Concerning the check that was purportedly given to Mr. Sells and that was claimed to have been deposited by him in the First State Bank, the juror stated that it was probable that he handled the check in the course of his duties, and that the proof during the trial might cause him to recall some facts about such handling of the check. He stated that he was free from bias or prejudice in the matter. Counsel stated: "We challenge the juror." The court then asked the juror: "Is your mind, Mr. Wilkinson, in such state that you feel at this time that you could give the state and the defendant a fair and impartial trial?" And witness answered: "I believe it is, yes, sir." The court then overruled the challenge.

It was not shown that either juror had any knowledge of what purported to be the factual details of the case, or had formed any fixed opinion in the matter, nor was it shown that either juror had any ill will against defendant, or was prejudiced against him in any way.

This court said in the case of Murphy v. State, 72 Okla. Cr. 1, 112 P. 2d 438, 50 C.J.S., Juries, § 233, p. 981:

"One accused of crime is by the Constitution guaranteed a fair and impartial trial, Okla. St. Ann. Const. Bill of Rights, § 20, but to insure this, it is not meant that jurors shall never have heard of the case, or shall not have any impression concerning any of the facts. In this day and age it would be difficult to find citizens competent for jury service who have not some impression as to the case, derived from newspaper accounts. The constitutional guaranty only excludes those jurors who have an opinion upon the merits of the case, based upon such testimony as may reasonably be expected to be presented upon the trial, or an opinion founded on personal ill will towards the accused."

See, also, the numerous cases cited, as well as Tit. 22 O.S.A. § 662; and State v. Dudley, 245 Mo. 177, 149 S.W. 449; Lemke v. State, 56 Okla. Cr. 1, 32 P. 2d 331; Remer v. State, 3 Okla. Cr. 706, 109 P. 247; Pruitt v. State, 94 Okla. Cr. 387, 236 P. 2d 702.

Even if the evidence of the jurors indicated that the trial court should possibly have excused one or both of the jurors from sitting in the within case, under the state of the record, it is impossible for this court to say that the failure to excuse either of such jurors resulted in prejudicial error, because there is no evidence in the record to show that the defendant was required and exhausted all his peremptory challenges in the process of selecting the jury so that the jurors

challenged for cause were forced on appellant. The record fails to show that defendant used any of his peremptory challenges. The rule is stated in paragraph three of the syllabus in Musgraves v. State, 48 Okla. Cr. 418, 292 P. 376, as follows:

"Where there is no evidence in the record to show that the defendant was required and had exhausted all his peremptory challenges at the time he challenged the juror, and by that reason was deprived of a fair and impartial jury in the trial of the cause, there is no showing of prejudicial error on the part of the trial court in overruling the challenge for cause to such juror."

See, also, Davis v. State, 53 Okla. Cr. 411, 12 P. 2d 555.

Considering the second specification that there was a variance between the information and the proof, defendant argues that while in the information it is set out and alleged that the cattle and hogs involved were obtained from Sol Sells, that the evidence developed that they belonged to others. Hence the variance.

The statute under which this prosecution was instituted is Tit. 21 O.S. 1951 § 1541, and reads:

"Every person who, with intent to cheat and defraud, shall obtain or attempt to obtain from any person, firm or corporation, any money, property, or valuable thing, of the value of Twenty ($20.00) Dollars, or less, by means or by use of any trick or deception, or false or fraudulent representation, or statement or pretense, or by any other means or instrument or device commonly called the 'confidence game,' or by means or use of any false or bogus checks, or by any other written or printed or engraved instrument or spurious coin, shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine not to exceed One Hundred ($100.00) Dollars, or by imprisonment in the county jail for not more than thirty (30) days, or by both such fine and imprisonment. If the value of the money, property or valuable thing referred to in the preceding paragraph, be more than Twenty ($20.00) Dollars, any person convicted hereunder shall be deemed guilty of a felony and shall be punished by imprisonment in the State Penitentiary, for a term not exceeding seven (7) years, or by a fine not to exceed Five Hundred ($500.00) Dollars, or by both such fine and imprisonment. The term 'false or bogus check' shall include checks or orders given for money or property which are not honored on account of insufficient funds of the maker to pay same, as against the maker or drawer thereof, the making, drawing, uttering or delivering of a check, draft or order, payment of which is refused by the drawee, shall be prima facie evidence of intent to defraud and the knowledge of insufficient funds in, or credit with, such bank or other depository provided, such maker or drawer shall not have paid the drawee thereof the amount due thereon, together with the protest fees, within five days from the date the same is presented for payment; and, provided, further, that said check or order is presented for payment within thirty days after same is delivered and accepted.

"The word 'credit' as used herein, shall be construed to mean an arrangement or understanding with the bank or depository, for the payment of such check, draft or order."

The charging part of the information reads:

"* * * that W. S. Moore did, in McCurtain County, and in the State of Oklahoma, on or about the 14th day of July, in the year of our Lord One Thousand Nine Hundred and Forty-seven and anterior to the presentment hereof, commit the crime of obtaining property under false pretenses by the use of a false and fraudulent check in the manner and form as follows, to-wit: That is to say the said W. S. Moore, in the County and State aforesaid, and on or about the 14th day of July, 1947, then and there being, did then and there unlawfully, willfully and feloniously obtain personal property of a value of $998.53, to-wit; cattle and hogs, from one Sol Sells by executing and delivering to the said Sol Sells a certain check in the amount of $998.53, and falsely and fraudulently representing to the said Sol Sells that said check was good and

genuine, when in truth and in fact, said check was false and fraudulent, and with the willful and felonious intent upon the part of the said W. S. Moore to deprive the said Sol Sells of the personal property heretofore described, contrary to the form of the statutes, in such cases made and provided against the peace and dignity of the State."

The evidence in the case discloses that the defendant obtained the cattle and hogs from one Sol Sells on July 14, 1947, gave him in payment therefor a check in amount of $998.53 drawn on the First National Bank at Durant, Oklahoma, and that said check was returned to the depository bank, the First State Bank at Idabel, marked "Insufficient funds", and that at the request of the defendant, Sells ran the check through for collection a number of additional times, and each time the check was returned unpaid. The defendant identified the check on cross-examination and admitted the issuance and that it had not been paid, and that he in turn sold the cattle and hogs and got the money from such sale, but he did not remember whether he made a profit or not.

Sol Sells testified that he operated a live stock business, running a community sale on commission just out of Idabel, on the Broken Bow road; that people brought cattle in, that they were listed and sold and that he paid the owners on sale and the owners would go to the First State Bank at Idabel and get their money.

It will be noted that it is not alleged in the information that title to the hogs and cattle in question was vested in Sol Sells, but only that they were obtained from him by the defendant. Reference to the above statute discloses that it is not specified that the thing obtained be from the owner, but it is only required that it be obtained from "any person, firm or corporation". It follows, therefore, that there is not a variance between the information and the proof.

The above statute being silent as to the necessity of setting out the name of the true owner of the cattle and hogs, the provisions of Tit. 22 O.S. 1941 § 406, would prevail. This statute provides:

"When an offense involves the commission of, or an attempt to commit a private injury, and is described with sufficient certainty in other respects to identify the act, an erroneous allegation as to the person injured, or intended to be injured, is not material."

In this case, what concern could it be to the defendant as to whether Sol Sells sold him the cattle as owner or as agent for other persons? 22 Am. Jur. 463, § 32. The question here was whether he obtained the cattle from Sells under false pretenses by the use of a false and fraudulent check. No other person was disputing his title. In fact, the cattle and hogs had been converted. The primary purpose of requiring the name of the person defrauded to be set out is to identify the transaction so that defendant, by proper pleading, may protect himself against another prosecution for the same crime. And even where a variance exists, it is not material unless it is such as might mislead the defense, or expose the defendant to the injury of being put twice in jeopardy for the same offense. These principles have been previously applied by this court as to larceny statutes. But we now conclude from the foregoing that Tit. 22 O.S. 1951 § 406 is not limited in application to the larceny statute only. Dickson v. State, 28 Okla. Cr. 378, 231 P. 315; Woods v. State, 22 Okla. Cr. 365, 211 P. 519; Butler v. State, 60 Okla. Cr. 188, 62 P. 2d 662; Hilyard v. State, 90 Okla. Cr. 435, 214 P. 2d 953; Pruitt v. State, supra.

It is next contended that there was no showing in the evidence that the check shown to have been issued by the defendant in payment for the cattle and hogs obtained from the prosecuting witness Sol Sells was ever presented for pay-

ment to the First National Bank in Durant, Oklahoma, the bank on which it was drawn.

The county attorney failed to follow the better practice and have some official from the First State Bank at Idabel (the bank where it was shown that the drawee named in the check in question did his banking business) familiar with the handling of checks for collection, testify in the case. The payee named in the check in question, Sol Sells, did, however, identify the same as bearing the signature of the defendant, and it was shown to have been drawn on the First National Bank at Durant. Witness testified that the check "went through" and was not paid. The reporter in reflecting the exhibit fails to show the wording on the "Bank Stamps" shown to have been stamped on the check. No objections were interposed on the ground that the check failed to bear the stamps of the First National Bank at Durant, showing receipt for payment and dates. On the front of the check it is marked "INSF". The court admitted it in evidence.

The check was dated July 14, 1947. A charge was not filed until in October, and the matter was not filed in the district court until April 6, 1948. Witness Sells testified concerning the check:

"A. It is a check given by W. S. Moore, given me on July 14, 1947, for livestock. Livestock he stood in the ring and bought that were sold at my sale and they taken the check in the office and it came back hot. I sent it back. I told him and he told me to send it back, that the money was in the bank. I did, and it came back again, and I told him about it and he said to send it back, the money is there. It came back and he told me to see him and he said to re-run the check, the money was in the bank. I run it back and it came back. Later on I saw Mr. Moore at Hugo and he told me as quick as he gathered his peanuts he would pay it. I went to Durant and Mr. Moore did not have any peanuts. I came back here."

Witness further stated that he talked to the defendant several times and that he admitted that the check was presented to his bank and not paid.

The defendant testified and identified the check in question and admitted that he issued it and that his bank had turned down payment, and "sent it back."

We conclude that the evidence on the point in question was sufficient to withstand the demurrer interposed in the first instance, and that the case as a whole forces the conclusion that defendant's specification of error three is without merit.

It is urged by specification four that money was in the bank to pay the check herein involved when it was issued, and it is therefore asserted that this prosecution must fail.

Defendant attempted to show by his evidence that he had sufficient funds in the First National Bank at Durant, drawee bank, the day the check was given, and attempted to show that his son, prior to the presentation of the check, wrote checks on defendant's account and so depleted it that defendant did not have sufficient funds on deposit when the Sol Sells check was presented, or as defendant put it, as to his son's checks: "It was because those checks beat my check to the bank." Defendant denied any intention to defraud. He offered and there was admitted in evidence, his bank statement for June, 1947, together with a number of checks claimed by defendant to have been issued by his son, Bruce Moore, who lived at Valliant. It is not without significance that the checks in question are signed "W. S. Moore" with no indication of being drawn by any person other than the purported drawer. The payee in each case is Bruce Moore, the son.

The statement shows, contrary to argument presented, that on July 14, 1947, the date the Sol Sells check was issued, defendant had $866 balance in his account, though it shows that on July 12 he had a balance of $1,030.05. Of course, it would require several days in the regular course of business for the check given Sells and deposited at Idabel to be presented to the bank at Durant. The defendant admitted that when he again attended a cattle sale at the Sells sales barn at Idabel, on July 21, that Sells told him the July 14 check had been returned unpaid by the First National Bank at Durant, so we conclude that it was presented in due course.

It is further noted that the Bruce Moore checks claimed to have caused the depletion of the account, amounting to $1,279, were paid prior to the issuance of the Sells check, though one in amount of $300 was paid August 1, 1947.

Attempt was made to excuse Bruce Moore by showing that someone had given him worthless checks. Of course, that evidence was not pertinent. Just a little imagination will indicate where that kind of evidence would lead.

Defendant was responsible for his bank account. If he permitted his son to check on his account, it was incumbent on him to know the condition of his account prior to the issuing of checks, and not only to know his balance, but to see that it was at all times sufficient to take care of checks that he would personally draw on the account. A different situation is presented from a case where some stranger would forge defendant's name to a check and thus deplete his account. The condition of the drawer's account at the time the check was issued is not conclusive as to his knowledge or lack of knowledge as to whether he had sufficient funds in the drawee bank to pay the check in full upon presentment. The question is, had he already drawn, or did he thereafter draw or authorize an agent to draw, checks against the fund in an amount sufficent to deplete the same before the check in question could in due course be presented for payment. Huffman v. State, 205 Ind. 75, 185 N.E. 131; People v. Humphries, 226 App. Div. 500, 234 N.Y.S. 688; Jones v. State, 123 Tex. Cr. R. 487, 59 S.W. 2d 418, 95 A.L.R. 493.

There was presented for the consideration of the jury a question of fact, and being the question of fraudulent intent, which is the gist of the offense of obtaining property by means of a bogus check. The indorsement of a check by drawee bank "insufficient funds" is "prima facie evidence" of intent by drawer to defraud, provided that drawer does not pay drawee amount of check with protest fees within five days from date of presentment thereof for payment, and such presentment is made within 30 days from date of delivery of check. 21 O. S. 1951 § 1541; Armstrong v. State, 74 Okla. Cr. 42, 122 P. 2d 823; Stevens v. State, 74 Okla. Cr. 194, 124 P. 2d 426. Evidently, the evidence of the defendant was not considered by the jury as sufficient to overcome the statutory presumption, Tit. 21 O.S. 1951 § 1541, and other evidence offered by the state in support of the charge. This court will not interfere with the verdict of a jury where the evidence is conflicting. Coats v. State, 90 Okla. Cr. 217, 212 P. 2d 141, 214 P. 2d 455; Stevens v. State, supra.

Defendant urges that he offered to pay the prosecuting witness the amount of the check and that this constitutes a complete defense. The prosecuting witness denied this. His evidence was that he sent the check back for collection a number of times at the request of the defendant, but the check was never paid. Criminal proceedings were not instituted until many weeks after the check was issued. In fact, the case was not filed in the district court until nearly nine months after issuance. After the case was filed defendant rigthfully referred third parties to the county attorney.

Neither a promise to repay or restore, nor an intention to do so, deprives a false or fraudulent act in obtaining money or property of its criminality. 22 Am. Jur. 457, § 23; Pepper v. People, 75 Colo. 348, 225 P. 846; Commonwealth v. Ferguson, 135 Ky. 32, 121 S.W. 967, 24 L.R.A., N.S., 1101, 21 Ann. Cas. 434; State v. Holmes, 98 Kan. 174, 157 P. 412, L.R.A. 1916 E. 1104; Moss v. State, 194 Ark. 524, 108 S.W. 2d 782; Haines v. State, 135 Neb. 433, 281 N.W. 860.

In line with the contentions above treated, the defendant offered three instructions which were by the court not given. By reason of what we have already said, we find that the trial court properly refused to give the instructions in question. We find from the instructions actually given by the court that in instruction Two, the jury were advised that it was a crime for a person "with intent to cheat and defraud" to obtain property from another person by use of a false or bogus check; that instruction Three advised the jury that the fact that the check was not paid within five days after it was given was prima facie evidence of intent to defraud, but this was not conclusive, and that the defendant had the right to introduce evidence to show that he did not have any such intent, and that if "the jury had any reasonable doubt about defendant's intent", then the jury must return a verdict of not guilty; and instruction Four advised the jury that they must find beyond a reasonable doubt that the defendant at the time the check was given, had an unlawful intent to cheat and defraud, or they must acquit him. It is our conclusion that all the points contained in the requested instructions to which defendant was entitled to have embodied in the instructions were covered by the instructions actually given by the court.

It is argued that the punishment of one year in the penitentiary and a fine of $300 is excessive.

Tit. 21 O.S. 1951 § 1541 provides that the maximum punishment for the crime of obtaining property under false pretenses is imprisonment in the State Penitentiary for a term of seven years, or a fine of $500, or by both such fine and imprisonment. The jury was very lenient in view of the amount of penalty that they might have assessed.

Evidently the jury, as a mitigating circumstance, considered as true defendant's testimony that his son, whom he had authorized to sign defendant's name to checks, had without his knowledge depleted the account.

By reason of what has been said, the verdict and judgment is affirmed.

BRETT, P. J., and JONES, J., concur.