STATE OF CONNECTICUT *v.* THEODORE H. SILLS, JR.

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CR 15-3414

Argued September 16—decided November 8, 1963

*Benjamin Globman,* of Hartford, for the appellant (defendant).

*Stanley J. Traceski,* assistant prosecuting attorney, for the appellee (state).

JACOBS, J. The defendant was convicted upon an information which alleged that "on or about October 4, 1961, at Newington, Connecticut, [he] did commit the crime of fraudulent issue of [a] check in violation of § 53-361 of the General Statutes."[1] He has appealed. The essential facts are not in dispute. The defendant was a partner in a used-car business known as Associated Auto Body, located in the town of Rocky Hill, Connecticut. For several months prior to October 4, 1961, the defendant had business dealings with the Newington Auto Auction through Morris Darling, its general manager and an officer of the corporation. On several occasions prior to and following October 4, the defendant had issued checks to the Newington Auto Auction drawn upon his account No. 63-496, which he had established

---

[1] "Sec. 53-361. FRAUDULENT ISSUE OF CHECKS OR DRAFTS. Any person who, with intent to defraud, makes, draws, utters or delivers any check, draft or order for the payment of money, upon any bank or other depositary, knowing at the time of such making, drawing, uttering or delivering that the maker or drawer has not sufficient funds in, or credit with, such bank or other depositary, for the payment of such check, draft or order in full upon its presentation, shall be fined not more than one thousand dollars or imprisoned not more than one year or both. As against the maker or drawer thereof, the making, drawing, uttering or delivering of such check, draft or order, the payment of which is refused by the drawee for the reason that the maker or drawer has not sufficient funds in, or credit with, such bank or other depositary for the payment of such check, draft or order in full upon its presentation, shall be prima facie evidence of intent to defraud under the provisions of this section, unless such maker or drawer pays such check, draft or order, with all costs and protest fees, within eight days after receiving notice that the same has not been paid by the drawee. The word 'credit' shall be construed to mean an arrangement or understanding with such bank or depositary for the payment of such check, draft or order in full on presentation."

and maintained with the Florida National Bank at Lakeland, Florida. These checks were all paid in full upon presentment. On October 3, 1961, the defendant sent by air mail from Newington, Connecticut, a deposit, consisting of several checks totaling $300, to the Florida National Bank at Lakeland, to be applied to the credit of his account. The deposit was received on October 5 (exhibit 3) and credited to the defendant's account. On that date, according to the bank's statement (exhibit 2), there was a balance in the defendant's account of $366.36. On October 4, the defendant drew a check (exhibit A) for $150, against his account, which was made payable to the order of the Newington Auto Auction and given to Morris Darling in payment for a used car. On October 16, the check was returned unpaid because it was "drawn against uncollected funds." The defendant was notified of its nonpayment on October 19. On that date, he advised Darling to redeposit the check upon his assurance that he had on deposit sufficient funds to meet payment in full upon its presentation. The court found that "on said date [October 19, 1961] there was an adequate balance in the account of the defendant to pay said check." The Newington Auto Auction did not redeposit the check on October 19; instead, it held the check until November 27, some thirty-nine days after it was assured of payment of the check; by the time the check reached the drawee bank, the defendant had closed out his account. In the meantime, the defendant had been recalled to active military service on October 28; the account was closed on November 27 or November 28.

Upon these facts, which were undisputed, the court concluded that "the defendant issued the check on October 4, 1961, at a time when he knew that the deposit had not been received by the Florida National Bank [at Lakeland] and that he

had the intent to defraud the Newington Auto Auction."

We do not decide on this appeal whether the offense charged is a species of fraud by false pretenses; see *Huffman* v. *State,* 205 Ind. 75, 81; 35 C.J.S. 833, False Pretenses; or whether, as stated in *State* v. *Lowenstein,* 109 Ohio St. 393, 402, "[t]he crime of uttering a check to defraud is not a crime of false pretense; it is a new and distinct crime." See *State* v. *Goerdes,* 48 N.J. Super. 293, 298. In *State* v. *Callahan,* 23 Conn. Sup. 374, we had occasion to construe § 53-361, upon which this prosecution is based, and there held (p. 377): "There are three essential constituent elements in our statutory definition of the offense. First, the drawing of a check on a bank or other depositary for the payment of money; second, knowledge at the time of drawing the check that the drawer has not sufficient funds in, or credit with, the bank or depositary to meet the check in full upon presentation; and third, an intent to defraud." See notes, 35 A.L.R. 375, 43 A.L.R. 49.

In the case before us, the state offered no evidence from the drawee bank on either the question of insufficiency of funds in the defendant's account or the lack of an arrangement or understanding with the bank. It is, therefore, unnecessary for us to consider or decide whether in the instant case the presumption arising from the prima facie case created by statute has any application. For refusal to pay may have been for any one or more of a variety of reasons completely disassociated with the amount of money the defendant had in his account. A bank may refuse payment because, without the drawer's knowledge, it had applied his funds upon an indebtedness owing to it, or because his account had been sequestered through legal proceedings, or a check

or draft deposited by him had been unpaid and so charged back. See *Wolfe* v. *State,* 76 Fla. 168 (check returned unpaid due to an arrangement between the drawee bank and the bank which presented the check for payment); *State* v. *Thompson,* 37 N.M. 229 (prima facie evidence of issuing fraudulent check overcome by evidence showing defendant had sufficient credit to absorb the amount of the check); *State* v. *Hack,* 284 S.W. 842 (Mo. App.) (issuance of check under circumstances shown could not have been with intent to defraud); *People* v. *Humphries,* 226 A.D. 500, 503 (N.Y.) ("[t]here would have been sufficient funds to pay this check but for the fact that payment was stopped upon another check which defendants had reason to believe would be honored"); see note, 95 A.L.R. 486, 490, and cases cited. Even more directly in point is *Moody* v. *State,* 152 Tex. Crim. 265, where the defendant's check was refused because it was "drawn against uncollected funds." The court held that guilt could not be predicated upon an act of a third party—the bank—and the bank should have notified the defendant that it was not going to honor checks against the deposit.

Moreover, there was evidence in this case (exhibits 2 and 7) of the bank's statement of the condition of the defendant's account from October 5 through November 20. At all times during that period, the daily balance in the account exceeded the amount of the check in question. On November 20, the last entry shown on the ledger, there was a balance of $203.96. The defendant established the fact that there was no intent to defraud when the check was given. See *People* v. *Weiss,* 263 N.Y. 537. There would have been sufficient funds to pay the check but for the fact of uncollected funds which the defendant believed would be and were in fact collected and credited to his account. We hold that there was insufficient evidence in the case to support

the court's finding that the defendant issued the check with intent to defraud.

There is error, the judgment is set aside and the case is remanded with direction to render judgment that the defendant is not guilty and ordering that he be discharged.

In this opinion KINMONTH and LEVINE, Js., concurred.